## CITY OF BRISTOL *v.* DAVID VOGELSONGER ET AL.
### (8002)

DUPONT, C. J., O'CONNELL and NORCOTT, Js.

Argued February 16—decision released May 29, 1990

*James Wu,* with whom, on the brief, was *Lisa M. Ferraro,* for the appellants (defendants).

■■■■■■

*I. Milton Widem,* with whom were *Emily N. Roisman* and, on the brief, *Michael S. Lubofsky,* for the appellee (plaintiff).

NORCOTT, J. This appeal arises out of condemnation proceedings commenced by the plaintiff, the city of Bristol (the city), against the defendant landowners (the defendants).[1] The defendants appeal from the trial court's denial of their motions for summary judgment[2] and its appointment of three disinterested appraisers to assess the value of their properties that were the subject of the condemnation proceedings.

The city had conducted studies to determine what measures would be necessary to maintain an adequate water supply for the city over the next century. On the basis of those studies, it concluded that it must expand Cook's dam, located in Harwinton, to build a reservoir.

[1] The defendants are David and Brenda Vogelsonger and Charles and Deanna Condon. The Vogelsongers and Condons filed separate appeals based upon identical grounds. The appeals were consolidated, and all four parties were represented at oral argument. Thereafter, on March 7, 1990, the Vogelsongers withdrew their appeal. The only defendants remaining, therefore, are Charles and Deanna Condon.

[2] We note that a denial of a motion for summary judgment is not immediately appealable as a final judgment under Practice Book § 4000, nor is it generally reviewable after a final judgment has been rendered. See *Denby* v. *Voloshin Cadillac, Inc.,* 3 Conn. App. 181, 181–82 n.3, 485 A.2d 1360, cert. dismissed, 196 Conn. 802, 491 A.2d 1105 (1985). This is premised upon the assumption that the party whose summary judgment motion is denied will then be given a full trial on the merits. See id.; see also *Greengarden* v. *Kuhn,* 13 Conn. App. 550, 552, 537 A.2d 1043 (1988).

This appeal, like the appeal in *Denby,* was taken after a final judgment was rendered. Ordinarily, the denial of a motion for summary judgment is not reviewable on appeal because even if the motion is improperly denied, the error is not reversible; the result has merged into the subsequent decision on the merits. To hold otherwise would be "to depart from this sound policy which allows a decision based on more evidence to preclude review of a decision made on less evidence." *Greengarden* v. *Kuhn,* supra.

Because this is an exceptional case where, after the denial of the summary judgment motion, the movant parties were not afforded the opportunity to have a full trial on the merits, we will review this claim.

The city determined that certain properties owned by private citizens of Harwinton were essential to this plan. The city purchased almost all of the essential properties except those belonging to the defendants, who refused to sell.

The city then sought to acquire the defendants' land by eminent domain pursuant to § 2 of Special Act No. 251 (1911).[3] In order to commence this condemnation action, the city filed an "Application for Appointment of Appraisers to Determine Compensation or Damages as to taking of Real Property" pursuant to § 48e of the city charter and the special act.[4] The defendants filed an answer and ten special defenses. On December 1, 1986, at a hearing on a motion to appoint the appraisers, the court, *Spada, J.,* denied the city's application.

On January 9, 1989, the court, *Fracasse, J.,* sent notice to the parties reminding them that they were to file, by January 18, "legal memoranda on questions of law to be considered by the trial court." The defendants filed memoranda addressing the question of whether the special act gave the city the authority to condemn this property. This action was scheduled for trial on January 25, 1989. On that date, the defendants filed motions for summary judgment based upon the same legal claim outlined in their memoranda, namely, that the city lacked authority to condemn their properties. The court, *Freed, J.,* denied the motion, ruling that the city did have the power to condemn property in Harwinton pursuant to the act.

---

[3] Section 2 of Special Act No. 251 (1911) provides the procedure for payment of just compensation and "in case of disagreement between said town . . . and any owner or owners as to such compensation . . . any judge of the superior court may, on application of either party . . . appoint three disinterested persons to examine any such property . . . ." The plaintiff claims this section provided the procedure for them to effectuate a taking.

[4] Special Act No. 251 (1911) was incorporated into the city's charter in § 48e.

On March 9, 1989, the city filed a motion for appointment of appraisers. At the hearing on that motion, the defendants objected to the appointment and claimed they were entitled to present evidence in support of their special defenses before an appointment could take place. On March 31, 1989, the court, *O'Connor, J.,* granted the city's motion for appointment of appraisers without a written memorandum of decision. From this ruling, the defendants appeal.

The defendants claim that the trial court erred in denying their motions for summary judgment and ruling that the special act empowered the city to condemn their properties. The defendants further claim that the trial court erred in granting the city's motion for appointment of appraisers because the appointment itself assumed the propriety of these takings and decided the defendants' special defenses against them without affording the defendants their right to a full hearing on the merits. We find error in part.

I

The defendants first claim that the trial court erred in denying their motions for summary judgment and, thereby, holding that the special act permits the city to take property located in Harwinton by eminent domain. We disagree.

Section 1 of the special act states that the city "may take, lease, and use the water of any spring, stream, and watersheds and drainage areas . . . and is hereby given full power to . . . *take, lease, and hold by purchase or gift* any real estate, personal property, or easements necessary or convenient to fully carry out the purposes of this resolution and for storing, conducting, and distributing water, and for all buildings and constructions necessary or convenient for fully supplying said town [now city] of Bristol and the inhabitants thereof with pure water . . . ." (Emphasis added.)

The defendants claim that the language of the special act does not authorize the city to take, by way of eminent domain, any land in Harwinton, but rather authorizes only the "taking" of water. They claim that, under the act, the only way for the city to obtain *land* is by voluntary transfer. They argue, in an attempt to support this claim, that the words "by purchase or gift" modify all three verbs preceding them: take, lease and hold.

"[S]tatutory language is to be given its plain and ordinary meaning." *Mazur* v. *Blum,* 184 Conn. 116, 118, 441 A.2d 65 (1981); see also *Carrothers* v. *Vumbacco,* 4 Conn. App. 168, 171, 493 A.2d 259 (1985). " 'A cardinal rule of statutory construction is that where the words of a statute are plain and unambiguous the intent of the [drafters] in enacting the statute is to be derived from the words used.' " *State* v. *Millstein,* 8 Conn. App. 581, 597, 513 A.2d 1253, cert. denied, 201 Conn. 814, 518 A.2d 72 (1986); see also *Rhodes* v. *Hartford,* 201 Conn. 89, 93, 513 A.2d 124 (1986). Where the court is provided with a clearly written rule, it "need look no further for interpretive guidance." Id.; see also *Connecticut Hospital Assn.* v. *Commission on Hospitals & Health Care,* 200 Conn. 133, 141, 509 A.2d 1050 (1986).

It is clear from the language of § 1 of the special act that the city has the power to take by eminent domain any land that is "necessary or convenient to fully carry out the purposes of [the] resolution," that purpose being to provide and maintain an adequate water supply to the city. The defendants' contention that the phrase "by purchase or gift" after the words "take, lease, and hold" must be read to modify all three verbs in the series is unpersuasive. The court is bound to construe a statute so as to give it a common sense meaning. *Marcolini* v. *Allstate Ins. Co.,* 160 Conn. 280, 284, 278 A.2d 796 (1971). To read these words as the defendants urge

would require this court to interpret this statute in a manner that does not convey a common sense meaning. The words "take" and "purchase" have two distinct meanings. "Take" must be construed to convey its common meaning: "to get into one's hands or into one's possession, power or control by force or stratagem." Webster, Third New International Dictionary. "Purchase" is defined as a "[t]ransmission of property from one person to another by voluntary act . . . ." Black's Law Dictionary (5th Ed.) It would require a strained and nonsensical reading to interpret the words "purchase or gift" as modifying "take." Second, one cannot conceivably "lease by purchase." A purchase involves a transfer of ownership of property, while a lease involves something less than a complete transfer of ownership. See Black's Law Dictionary, supra, p. 800.

" '[C]ourts must apply the . . . enactment according to its plain terms and "cannot read into the terms of a statute something which manifestly is not there . . . ." ' " (Citations omitted.) *Commissioner* v. *Freedom of Information Commission,* 204 Conn. 609, 620, 529 A.2d 692 (1987). The enactment here serves the purpose of ensuring an adequate water supply to the city, and it authorizes the city to acquire those properties necessary to serve that purpose. The trial court did not err in denying the defendants' motions for summary judgment.

## II

The defendants next claim that the trial court erred in granting the motion for appointment of appraisers to assess the value of the land. They contend that the granting of the motion necessarily concluded that these takings were valid and denied them their right to present evidence on their special defenses.

## A

The defendants assert that the granting of the motion for appointment of appraisers concluded that the takings in question were proper without a hearing on that issue. In response, the city argues that the propriety of these takings had already been ruled upon by Judge Freed when he denied the defendants' motions for summary judgment, and that, even if it had not been determined, a proper taking is not a prerequisite to the appointment of appraisers. We agree with the defendants.

After § 1 of the special act outlines the authority of the city to take certain property by eminent domain, § 2 provides that the city "is . . . authorized to enter upon any land or water for the purpose of making surveys, and to agree with the owner or owners of any property . . . which may be necessary or convenient for carrying out the purposes of this resolution as to the amount of compensation to be paid . . . and *in case of disagreement* between said town . . . and any owner or owners *as to such compensation or as to the amount of damages* which ought to be awarded . . . any judge of the superior court may, on the application of either party . . . appoint three disinterested persons to examine any such property which is to be taken or damaged . . . . Such judge may thereupon . . . direct said town to pay the sum appraised . . . in full compensation for the property acquired or the injury done by said town . . . ." (Emphasis added.)

It is evident from this act that the conclusion that a taking is proper is a prerequisite to the appointment of the appraisers. Should the taking be deemed proper, the appointment of appraisers to assess just compensation can be made. See *Antman* v. *Connecticut Light & Power Co.*, 117 Conn. 230, 239, 167 A. 715 (1933),

overruled on other grounds, *Buck* v. *Morris Park, Inc.,* 153 Conn. 290, 293, 216 A.2d 187 (1965), appeal dismissed, 385 U.S. 2, 87 S. Ct. 33, 17 L. Ed. 2d 2 (1966). If there has been no previous determination of the propriety of the taking, the act of appointing a committee of appraisers necessarily implies that conclusion. *Antman* v. *Connecticut Light & Power Co.,* supra.

### B

Because we conclude that the propriety of the taking is a prerequisite to the appointment of appraisers, we must address the issue of whether the propriety of the taking of the defendants' land had in fact been determined. It is clear from the transcript of the hearing on the city's motion for appointment of appraisers that Judge O'Connor was aware of this prerequisite and believed, in light of the city's representations, that Judge Freed had already ruled upon the propriety of the takings. It further appears that, believing that the propriety of these takings had already been ruled upon, Judge O'Connor proceeded to the next logical step and granted the motion to appoint the appraisers. In countering the defendants' appeal, the city argues, as it did before Judge O'Connor, that Judge Freed concluded that these takings were indeed proper. We do not agree.

In addressing the defendants' motions for summary judgment, Judge Freed was asked to rule upon the question of law of whether the city had the power to take this land. His denial of the defendants' motions for summary judgment was premised solely on the conclusion that the special act, in fact, authorizes the city to acquire property by eminent domain. Judge Freed did not, and could not in the context of a summary judgment adjudication, make a factual determination as to the propriety of these particular takings.

## C

Before determining whether the trial court erred in granting the city's motion and in appointing the appraisers, we must determine whether, as the city argues, the defendants waived their right to present their special defenses and contest the validity of these particular takings. We conclude that they did not.

The defendants filed their memoranda in compliance with an order of the trial court, *Fracasse, J.,* that "legal memoranda on questions of law to be considered by the trial judge must be filed by January 18, 1989." The defendants addressed the only issue involving solely a "question of law" and also filed their motions for summary judgment. Both the memoranda in response to the court order and those in support of the motion addressed only the legal question of whether the city had the authority to take land in Harwinton by eminent domain.

The defendants claim, as they did before the trial court at the hearing on their motions, that the other nine special defenses were not briefed because Judge Fracasse had specifically ordered "memoranda of law addressing legal issues" and that their other nine special defenses required factual determinations. The city argues that those other nine special defenses should have been briefed regardless of the issues involved and that by not presenting those issues to the court, the defendants abandoned them.

" 'Waiver is the intentional relinquishment of a known right,' " *Novella* v. *Hartford Accident & Indemnity Co.,* 163 Conn. 552, 561, 316 A.2d 394 (1972). " 'To constitute waiver "there must be both *knowledge* of the existence of the right and *intention* to relinquish it." ' " (Emphasis in original.) Id., 562; see also *Hensley* v. *Commissioner of Transportation,* 211 Conn. 173, 179 (1989). " '[W]aiver may be inferred from the circum-

tances *if it is reasonable so to do.'* " (Emphasis added.) *Novella* v. *Hartford Accident & Indemnity Co.,* supra.

Applying these principles to the circumstances of the present case, we conclude that it would not be reasonable to infer that the defendants waived their right to present their special defenses. In his order, Judge Fracasse specifically requested briefing on "questions of law." The defendants provided just that. Because the case had been claimed for a trial list, the defendants were justified in believing that they would have an opportunity to present the questions of fact involved in their special defenses at that trial and that the trial court's request for briefing on questions of law was made in an attempt to determine whether the case could be disposed of primarily without having to reach those factual issues.

If the court had determined that the city did not have the power to condemn, then the defendants would have prevailed without having to prove their special defenses. It was only after the court ruled that the city did, in fact, possess the power to condemn that the defendants' special defenses came into play. The nine remaining special defenses all contained allegations of fact that would have to be proven in order for the defendants to establish that these takings were not proper.

Because the defendants did not waive their right to present their special defenses, and because the propriety of these takings had not been ruled upon, it was error for the trial court to grant the motion application for appointment of appraisers.

There is no error in the denial of the motion for summary judgment, there is error in the granting of the motion for appointment of appraisers, and the case is remanded for further proceedings consistent with this opinion.

In this opinion the other judges concurred.