[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
Presently before the court is the plaintiff's motion for summary judgment, and the defendant's cross-motion for summary judgment. This case arises out of the efforts by the plaintiff to have this court enjoin the defendant from obtaining easement rights on the plaintiff's property through a condemnation proceeding. For purposes of the present motions, the parties have stipulated to the following facts.
I. STIPULATED FACTS
The plaintiff, Thomas Reynolds, owns property (hereinafter "the property") located in the town of Southington. The defendant, the city of Bristol (hereinafter "Bristol"), is a municipality within Hartford County. Bristol owns a landfill that is in close proximity to the property.
The Bristol landfill had been in operation prior to 1995 as a solid waste disposal site. On October 24, 1995, the Connecticut Department of Environmental Protection (hereinafter "CDEP"), entered into a "Consent Order" with Bristol in connection with the landfill. In the Consent Order, the defendant conceded that "the operation of a solid waste disposal area at the [landfill resulted] in a discharge of water, substance or materials, including but not limited to leachate, into the waters of the State." (Parties' Stip. Ex. B.) Because of the landfill's discharge of leachate into the environment, the Consent Order required that Bristol undertake certain investigations and studies regarding the landfill, and to propose plans in order to remediate the leachate contamination caused by the landfill. (Parties' Stip. Ex. B.) The Consent Order did not, however, require Bristol, now or in the future, to clean-up the contamination. (Parties' Stip. Ex. B.) CT Page 3611
The Consent Order did require Bristol to acquire control over all of the contaminated water rights or interests that were located in the "zone of influence."[1] As a result of the Consent Orders foregoing requirement, the Connecticut General Assembly in 1996 enacted Special Act 96-12 which, by its terms, provides that a municipality may acquire by condemnation certain property rights in property that is located outside the corporate limits of a municipality.
On April 14, 1997, the Bristol city council, in an attempt to conform to the Consent Order, and pursuant to the Special Act, passed a resolution authorizing the acquisition by Bristol of certain property rights and interests in a portion of the property.[2] Thereafter, on August 8, 1997, Bristol commenced condemnation proceedings against the plaintiff.
On September 17, 1997, Bristol filed a "Certificate of Taking" with the court, and recorded the certificate in the Southington land records. Bristol then commenced an appraisal of the fair market value of the property rights to be taken. Upon completion of the appraisal, Bristol deposited with the court the amount of the appraised value of the property rights.
On August 19, 1997, the plaintiff filed an application for a temporary injunction against Bristol to stop it from taking easement rights on the property. Along with the plaintiff's application for a temporary injunction, the plaintiff filed his complaint.
The plaintiff's complaint[3] seeks, inter alia, the following relief: (1) a temporary injunction from Bristols taking of the plaintiff's property interests; (2) a temporary injunction from any future condemnation acts of Bristol; (3) a permanent injunction enjoining Bristol from condemning the plaintiff's property rights; and (4) a permanent injunction enjoining Bristol from taking any future condemnation actions.
II. POSITIONS OF PARTIES
The parties are each seeking summary judgment on all of the claims of the complaint, supporting their respective motions with exhibits, documents and a joint stipulation of facts.
The plaintiff argues that he is entitled to summary judgment CT Page 3612 as a matter of law because Bristol's condemnation exceeds the scope of Special Act 96-12, and is, therefore, ultra vires.
Conversely, the defendant argues in support of its motion for summary judgment that Special Act 96-12 authorizes it to condemn easement rights in the property. Specifically, the defendant argues that because the Act expressly allows for the condemnation of "ground water rights and interests therein," the use of the language "interests therein" necessarily includes easement rights. Further, the defendant argues that it complied with the statutory procedures to effectuate the taking.
III. ISSUE TO BE DECIDED
The issue in dispute for this court to decide is whether the defendant's actions in the condemnation proceeding exceeded the scope of authority given by Special Act 96-12 and complied with the requisite statutory procedures.
For reasons more fully set forth below, this court holds that the defendant's actions in connection with the taking of property rights were procedurally proper and did not exceed that scope of Special Act 96-12.
IV. LEGAL DISCUSSION A. Standard for Summary Judgment
"Practice Book § [17-49] provides that rendition of a summary judgment is appropriate if the pleadings, affidavits and any other proof submitted show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. (Internal quotation marks omitted.) Miller v.United Technologies Corp., 233 Conn. 732, 755-52, 660 A.2d 810
(1995). "In ruling on a motion for summary judgment, the courts function is not to decide issues of material fact, but rather to determine whether any such issues exist." Nolan v. Borkowski,206 Conn. 495, 500, 538 A.2d 1031 (1988). "In deciding motions for summary judgment, the trial court is obliged to construe the evidence in the light most favorable to the nonmoving party . . . The test to be applied is whether a party would be entitled to a directed verdict on the same facts." (Citation omitted; internal quotation marks omitted.) Gabrielle v. Hospital of St.Raphael, 33 Conn. App. 378, 382-83, 635 A.2d 1232, cert. denied,
CT Page 3613
228 Conn. 928, 640 A.2d 115 (1994).
 B. Scope of Special Act 96-12
In resolving the present dispute, it is necessary to apply the well established rules of statutory construction. "When [the court) engages in statutory interpretation, [its] fundamental objective is to ascertain and give effect to the apparent intent of the legislature." (Internal quotation marks omitted.)Connecticut Light Power Co. v. Texas-Ohio Power, Inc.,243 Conn. 635, 645, 708 A.2d 202 (1998). "Ordinarily, if the language of a statute is plain and unambiguous, we need look no further than the words themselves because we assume that the language expresses the legislatures intent." (Internal quotation marks omitted.) Office of Consumer Counsel v. Dept. of Public UtilityControl, 246 Conn. 18, 29, 716 A.2d 78 (1998). "If, however, the statute is ambiguous, e.g., either opaque or susceptible to alternative conflicting interpretations, we will seek guidance from extrinsic aids, e.g., the legislative history. . . ." (Internal quotation marks omitted.) Anderson v. Schieffer,35 Conn. App. 31, 40-41, 645 A.2d 549 (1994). "[E]ven if a statute is considered clear on its face, if a literal interpretation of that statute would lead to unworkable results, resort to other aids to determine legislative intent is appropriate." State v.Cain, 223 Conn. 731, 744, 613 A.2d 804 (1992).
Special Act 96-12 provides in relevant part: "Any municipal corporation having a landfill within its corporate limits, with respect to which landfill the Commissioner of Environmental Protection has issued an order . . . requiring such landfill to be closed and requiring the acquisition of ground water rights or interests therein as part of the closure, shall have the right to purchase ground water rights or interests therein which may extend beyond the corporate limits of such corporation. . . . If such municipal corporation cannot agree with any owner of real property upon the amount to be paid for ground water rights or interests therein, it shall proceed in the manner provided in section 48-12 of the general statutes to take such ground water rights or interests therein. . . ." Because this court finds that the language of the Act is somewhat vague, especially with respect to the meaning of the phrase "ground water rights or interests therein," the court looks to the Acts legislative history, in addition to the language of the statute itself, in order to discern its purpose and intent. CT Page 3614
There can be little doubt as to the intent and purpose of Special Act 96-12. Special Act 96-12 was enacted specifically for Bristol.[4] The General Assembly enacted Special Act 96-12 in order to provide Bristol with the means to carry out the requirements of the Consent Order. See footnote 4.
The Consent Order required Bristol to acquire all of the ground water rights that were located within the specific "zone of influence". It required Bristol to gain control of such ground water interests, both within and without its municipal borders, as had become contaminated by the landfill.
One of the aspects of the CDEP's Consent Order was that Bristol test, monitor, and evaluate the level of the contamination within the "zone of influence." (Parties' Stip., Ex. B.) These functions could not be carried out unless Bristol had access to the contaminated properties. Therefore, Special Act 96-12 must be construed to permit this.
The purpose of Bristol's acquisition of the aforementioned property rights and interests was to enable it to undertake certain investigations and studies regarding the level of contamination in the groundwater. (Parties' Stip. Ex. B). By doing so, Bristol, at some point in the future, would be able to present plans and proposals to the CDEP for the remediation of the groundwater contamination. (Parties' Stip. Ex. B).
Although the language of Special Act 96-12 does not expressly authorize a municipality to condemn easements, it is plain from the legislative history that the legislature contemplated that Bristol would have such statutory authority. The legislature passed Special Act 96-12 so that Bristol would have the ability to comply with every aspect of a CDEP consent order. Specifically, Representative Smith stated in his testimony before the Judiciary Committee that the proposed act was needed so that Bristol could "abide by the [CDEP] Consent Order." Conn. Joint Standing Committee Hearings, Judiciary, Pt. 6, 1996 Sess., p. 1950. Furthermore, Rep. Smith stated that as a part of the Consent Order Bristol was required to "monitor" the contaminated areas for a period of "twenty years." Id., 1952. Rep. Landino asked: "So the purpose of the bill is essentially to comply with the Consent Order." Id. To which Rep. Smith responded: "correct."Id. see also, 39 H.R. Proc., Pt. 6, 1996 Sess., p. 1927 (act necessary so that municipalities can conform to CDEP consent orders.) CT Page 3615
Our courts have "traditionally eschewed construction of statutory language that . . . thwarts its manifest purpose."Sutton v. Lopes, 201 Conn. 115, 121, 513 A.2d 139, cert. deniedsub. nom., McCarthy v. Lopes, 479 U.S. 964, 107 S.Ct. 466,93 L.Ed.2d 410 (1986). In the present action, to find by way of statutory construction that the legislature had excluded the power to condemn easements on the plaintiff's property, which is necessary for the effectuation of CDEP consent directives, would be to utterly disregard the purpose and intent of the Act. This court views such a finding as neither warranted nor appropriate. See, Bristol v. Vogelsonger, 21 Conn. App. 600, 604,575 A.2d 252, cert. dismissed, 212 Conn. 811, 564 A.2d 1072 (1990) (court bound to construe condemnation statute so as to give it common sense meaning). Accordingly, this court holds that the defendant's taking in this action did not exceed the scope of Special Act 96-12.
"The authority to condemn property is to be strictly construed in favor to of the owner of property and against the condemnor." (Pl's Mem. Supp. P. 4-5); see Simmons v. State,160 Conn. 492, 500, 280 A.2d 351 (1971). However, in light of the admonition by the Connecticut Supreme Court that a condemnation statute "should not be interpreted in such a way as to thwart the purpose for which it was enacted,"[5] this court will not construe the applicability of Special Act 96-12 so narrowly as to render its purpose ineffective.
 C. The Taking was Procedurally Proper
One of the allegations in plaintiff's complaint is that an improper procedure was followed by the defendant in the taking. This contention is without merit. The Special Act provides that the taking shall be in accordance with General Statutes §48-12, which states:
"The procedure for condemning land or other property for any of the purposes specified . . . if those desiring to take such property cannot agree with the owner upon the amount to be paid him for any property thus taken, shall be as follows . . . any town, municipal corporation . . . shall proceed in the same manner specified for redevelopment agencies in accordance with sections 8-128, 8-129, 8-129a, CT Page 3616 8-130, 8-131, 8-132, 8-132a and 8-133."
Defendant's Statement and Notice complied with these provisions.
V. CONCLUSION
Therefore, the defendant's motion for summary judgment is granted, and the plaintiff's motion for summary judgment is denied.
ANGELA CAROL ROBINSON JUDGE, SUPERIOR COURT