ANNA E. CHAPIN, TOWN CLERK OF NEW MILFORD
*v.* FREEDOM OF INFORMATION COMMISSION ET AL.
(8624)

SPALLONE, O'CONNELL and NORCOTT, Js.

Argued May 4—decision released July 10, 1990

*Christopher G. Winans,* with whom, on the brief, was *Richard A. O'Connor,* for the appellant (plaintiff).

*Victor R. Perpetua,* commission counsel, with whom, on the brief, was *Mitchell W. Pearlman,* general counsel, for the appellee (named defendant).

NORCOTT, J. The plaintiff appeals from the trial court's dismissal of her administrative appeal from the determination by the freedom of information commission (FOIC) that she had violated the Freedom of Information Act (FOIA) by failing to provide certain information in the format requested.[1] We reverse the judgment of the trial court.

The facts in this case are not in dispute. The plaintiff, as part of her duties as town clerk, maintains a computer index of the town land records. This index system is licensed to the town under contract from an Ohio corporation. The town clerk enters the daily land record data onto the computer diskette which is sent to the Ohio corporation for editing, analysis and processing. The corporation then returns the diskettes to the town for reuse.

The town clerk also maintains a temporary land records index by creating a daily hard copy printout of the data contained in the diskette. The Ohio corporation prints and delivers a merged year to date hard copy index at the end of each month and an annual hard copy index at the end of each year. These indices replace the temporary index maintained by the clerk. The information contained in these daily hard copy indices is identical to that on the computer diskettes, the only difference being the format.

On June 15, 1987, the complainant, George Cuartero, requested copies of the land records index on a com-

---

[1] The trial court, *Fracasse, J.,* entered a default judgment for failure to appear against George Cuartero, the person who filed the complaint with the FOIC.

puter diskette. At that time, he was invited to inspect and duplicate the hard copy printouts, but was denied access to the alternative format requested.

Cuartero then brought a complaint to the FOIC alleging that the town clerk had violated the FOIA. The commission rendered a decision finding that the town clerk did in fact violate the FOIA and ordering the plaintiff to provide Cuartero with a copy of the land record index on a computer diskette, for which Cuartero was to bear the actual costs.

The plaintiff appealed to the Superior Court from the FOIC's decision. Following a trial, the court, *Schaller, J.,* upheld the FOIC and dismissed the plaintiff's appeal. This appeal ensued.

The plaintiff does not dispute that the land records index contains public information. The plaintiff claims that the trial court should not have concluded that the FOIA requires disclosure of access to public records *in the medium requested.* The plaintiff argues that the clear language of the statute requires only that the agency provide the requesting party with a hard copy of the information and not that it produce the information in whatever form requested. The FOIC argues that the language of § 1-19a does not limit the form of copies to paper copies, but rather a "printout" can be in the form of a computer diskette and that it must be provided in that form. We agree with the plaintiff and reverse the judgment.

In reaching its decision, the FOIC found the plaintiff in violation of §§ 1-15 and 1-19a of the FOIA. Section 1-15 provides that "[a]ny person applying in writing shall receive, promptly upon request, a plain or certified copy of any public record." Section 1-19a of the FOIA provides: "Any public agency which main-

tains its records in a computer storage system shall provide a *printout* of any data properly identified." (Emphasis added.)

These sections clearly mandate disclosure of the information, and the plaintiff does not contest that fact. The dispositive issue is whether that disclosure must be made in the form requested. " 'The intention of the legislature is found not in what it meant to say, but in the meaning of what it did say.' . . . Where the language of the statute is clear and unambiguous, the courts cannot, by construction, read into statutes provisions which are not clearly stated." *Point O' Woods Assn., Inc.* v. *Zoning Board of Appeals,* 178 Conn. 364, 366, 423 A.2d 90 (1979); see also *Ganim* v. *Roberts,* 204 Conn. 760, 763, 529 A.2d 194 (1987). The words of a statute are to be construed according to their commonly approved usage. *Ganim* v. *Roberts,* supra; *Bristol* v. *Vogelsonger,* 21 Conn. App. 600, 575 A.2d 252 (1990).

Section 1-19a requires that, if requested, the agency must provide a "printout" of the data contained on its computer system. The term "printout" is defined as "the printed output of a computer." American Heritage Dictionary (2d College Ed.). In its common usage, a computer printout is generally a hard copy[2] of the information contained in a computer system. Further, § 1-19a must be read in conjunction with § 1-15, which requires that, upon request, the agency provide a *copy* of any public record. It is clear from the statutory language that the legislative intent was to provide access to public information. Section 1-15 requires that "copies" of public records be made available and, should an agency attempt to avoid the mandate of the FOIA by housing all of its information in a computer system, § 1-19a specifically states that "printouts" be made

---

[2] A hard copy is a "readable printed copy of the output of a machine, as a computer." American Heritage Dictionary (2d College Ed.).

available. It is clear from this statutory scheme that "printouts" were meant to be the computer equivalent of "copies."

The FOIA is our "right-to-know" law, providing for disclosure of public information; the act provides a right to *inspect. Board of Trustees* v. *Freedom of Information Commission,* 181 Conn. 544, 550, 436 A.2d 266 (1980); *Gold* v. *McDermott,* 32 Conn. Sup. 583, 586, 347 A.2d 643 (1975). As long as the agency makes its information available for inspection, it is not in violation of the act. Cf. *Maher* v. *Freedom of Information Commission,* 192 Conn 310, 472 A.2d 321 (1984) (holding FOIC had authority to order disclosure of information in department of income maintenance (DIM) computer system where the department sought to withhold that information completely).

The FOIC relies on *Maher* in support of the proposition that the FOIA mandates disclosure in the format requested, but that case is inapposite. In *Maher,* the court held that the FOIC had the power to order the DIM to produce a computer tape of all public information that it sought to withhold from the public. Id., 316. The DIM argued that the information that it kept was exempt from the disclosure requirement of the FOIA because it contained privileged, nonpublic information. The DIM claimed that the only way it could disclose the public information sought would be to create a new computer program containing only the public information and that the FOIC could not order it to do so. The DIM argued that "§ 1-19 (a) of the Freedom of Information Act, which requires disclosure of 'records maintained . . . by any public agency,' should not be interpreted to require a state agency to provide information or records which the agency itself does not have readily available or which it does not maintain in the normal course of its operations." Id., 315. The trial court held that because the information that was sub-

ject to disclosure was being withheld, the DIM was required to make it available, even if that meant creating a new computer program.

*Maher* is clearly distinguishable from this case. Here, the plaintiff fulfilled her statutory obligation by making the information available to Cuartero in the manner dictated by statute. Cuartero received all of the public information to which he was entitled. Dictation of the format in which that information should be received is not contemplated by this act. To dictate the format is to go beyond the essence of the act, which is to provide for inspection of public records.

The judgment is reversed.

In this opinion the other judges concurred.