[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
INTRODUCTION
This is an appeal from the grant of a permit (the "Permit") by the named defendant (the "Commission"). The plaintiff intervened in the proceedings before the Commission pursuant to § 22a-19 of the General Statutes (all further section references are to the General Statutes, unless otherwise noted), and he has brought this appeal pursuant to § 22a-43.
NEW EXHIBITS
Subsequent to the hearing on this appeal, the plaintiff CT Page 4709 submitted to the court two tape recording cassettes and three other "items." No permission to submit those materials had been previously granted by the court, and, because the court finds that those items are not necessary to the equitable disposition of this appeal, they are not added to the record.
HISTORY
Prior to the granting of the Permit, the Commission granted authority to Norwich Community Development Corporation (the "Applicant") to develop a professional minor league baseball stadium on the same site to which the Permit relates, and the Permit authorizes further construction and site work for that stadium.
PLAINTIFF'S CLAIMS
Paraphrased, the plaintiff has made three broad claims, as follows:
 His right to cross-examine witnesses who testified before the Commission was violated;
 The Commission did not comply with the provisions of § 22a-19; and,
 The regulations of the Commission are inadequate under § 22a-20.
CROSS EXAMINATION
At the hearing before the Commission, the Applicant presented testimony in support of its application (the "Application") from three expert witnesses, and two employees of the planning department of the City of Norwich also testified (those five witnesses are hereinafter referred to, collectively, as the "Witnesses"). (Other witnesses also testified, but their testimony is not critical to the decision on this appeal.) At the hearing, the plaintiff presented to the Commission written questions which he asked to have answered by the Witnesses, and the plaintiff also posed questions orally to the Witnesses. Some of those questions were not answered, and others were not answered as fully as the plaintiff would have liked. The plaintiff claims that the failure of the Commission to compel the complete answering of those questions constituted a denial of his right to cross examination and therefore is a basis for CT Page 4710 sustaining this appeal.
Although a body of black letter law establishing the boundaries of the right to cross examine witnesses before a land use agency does not yet exist in Connecticut, one is clearly developing. Miklus v. Zoning Board of Appeals, 154 Conn. 399
(1967); Armstrong v. Zoning Board of Appeals, 158 Conn. 158
(1969); Dual-Lite, Inc. v. Zoning Board of Appeals of the Town ofNewtown, 10 CLT 18, p. 11-12. Relying on, inter alia, Miklus andDual-Lite, the plaintiff argues that the Commission allowed the Witnesses to ignore those boundaries when it did not compel the Witnesses to answer, or to answer to a degree satisfactory to him, his questions. This argument contains two components: a) that any unanswered questions were proper questions; and, b) that the Commission enjoyed the authority to compel a Witness to answer any such question and wrongfully elected not to exercise that authority. Because, as hereinafter held, the second of those components has not been established, the first will not be discussed or decided.
Although the plaintiff argues that the Commission had an obligation to go beyond merely allowing him to pose questions to the Witnesses and, through the exercise of some unidentified power which the plaintiff impliedly claims inheres in the Commission, to compel the Witnesses to answer those questions, the Commission, unlike a court, has no power of contempt, the threat or employment of which can be used to prod a witness to answer.
The right of cross examination exists, in large part, to allow an adverse party to test the credibility of a witness. If a trier of fact (such as the Commission) finds that a witness is without credibility, then the testimony of that witness should, of course, not be relied upon by the trier to support a finding. By extension, if a witness before a land use agency refuses to allow his or her credibility to be tested by proper cross examination, the testimony of that witness should not be relied upon to support a finding of the agency. However, the sanction of excluding a witness' testimony from consideration would be harsh and often unfair if it were invoked before a witness and the party producing that witness were made aware of the stakes of a refusal to cooperate. The proper vehicle to alert witnesses and parties to the perils of a refusal to submit to cross examination is a motion addressed to the agency to strike the testimony of the offending witness, after which an opportunity to respond to CT Page 4711 cross examination is provided. Because the plaintiff did not move the Commission to strike the testimony of any of the Witnesses who allegedly did not submit to cross examination, it is held that the Commission did not deprive the plaintiff of his right of cross examination.
CONSIDERATION OF ALTERNATIVES
Section 22a-19 (b) states:
 In any administrative, licensing or other proceeding, the agency shall consider the alleged unreasonable pollution, impairment or destruction of the public trust in the air, water or other natural resources of the state and no conduct shall be authorized or approved which does, or is reasonably likely to, have such effect so long as, considering all relevant surrounding circumstances and factors, there is a feasible and prudent alternative consistent with the reasonable requirements of the public health, safety and welfare.
 Gardner v. Conservation Commission, 222 Conn. 98 (1992), andPaige v. Town Plan and Zoning Commission, 235 Conn. 448 (1995), establish that § 22a-19 (b) requires an agency to determine: 1) whether there is a reasonable likelihood that unreasonable pollution will result from the proposed activity; and, if that question is answered affirmatively, 2) whether there is a feasible and prudent alternative to the proposed activity.
The three links in the chain of the plaintiff's claim concerning the consideration of alternatives are:
 1) Given the evidence before the Commission, it was obligated to find there was a reasonable likelihood that unreasonable pollution would result from the granting of the permit; so that,
 2) The Commission was required to determine whether there was a feasible and prudent alternative to the proposed activity; but,
 3) The Commission did not determine whether there was such an alternative. CT Page 4712
As to the first claim, a careful review of the record discloses no evidence which tended to establish that the proposed activity was reasonably likely to cause unreasonable pollution. To the contrary, there was substantial evidence, in the testimony of the Witnesses and in a document entitled "Finding of No Significant Impact" (Stipulation As To Record, March 2, 1995, Item 1) (the "FONSI"), to support the Commission's finding that further inquiry was not required by § 22a-19.
Nonetheless, the plaintiff argues that if the evidence before the Commission warranted a finding of no reasonable likelihood of unreasonable pollution, it did so only because the Witnesses refused to cooperate in their cross examinations. The plaintiff asserts that if the Witnesses had properly submitted to cross examination, he would have elicited from them testimony which would have moved the Commission to find that there was a reasonable likelihood of unreasonable pollution.
The plaintiff is correct that, as an intervenor under §22a-19, he could prove a reasonable likelihood of unreasonable pollution through his own testimony, through testimony of witnesses called by him, through testimony of Witnesses called by any other party and through exhibits introduced by any party. However, the plaintiff is not correct when he argues that if his failure to meet his burden of marshaling a preponderance of the evidence was due to a refusal of the Witnesses to cooperate in their cross examinations, then his failure to meet that burden should have been excused and he should have been deemed to have met that burden. If a party elects to meet his burden with testimony which he hopes to elicit on cross examination, and if the anticipated evidence is not forthcoming, the trier cannot presume how witnesses would have responded to unanswered questions and deem the party's burden to have been met.
Thus, it is held that a review of alternatives was not required by § 22a-19 (b). However, that does not conclude the matter of consideration of alternatives in this case because Section 10.2b of the Commission's regulations states:
 The Commission shall consider all relevant facts and circumstances in making its decision on any application for a permit, including but not limited to the following:
b. The alternatives to the proposed action CT Page 4713 including a consideration of alternatives which might enhance environmental quality or have a less detrimental effect, and which could feasibly attain the basic objectives of the activities proposed in the application. This consideration should include, but is not limited to, the alternative of requiring actions of a different nature which would provide similar benefits with different environmental impacts, such as using a different location for the activity. . . .
The excerpt from the Commission's regulations requires, even though § 22a-19 (b) did not, that the Commission consider alternatives to the proposed activity. However, that section does not advance the plaintiff's cause because a review of the record discloses that the the Commission had before it substantial evidence of a lack of appropriate alternatives to the proposed activity (FONSI, pages 34-39), and the transcript of the Commission's proceedings (pages 37-38) reflects that the Commission did, in fact, consider whether there were appropriate alternatives to the proposed activity, after which the Commission did determine, by resolution, that there were none. Accordingly, it is held that the Commission did not default in its obligations under § 22a-19 (b) or under Section 10.2b of its own regulations.
ADEQUACY OF REGULATIONS
In a challenge to the adequacy of the Commission's regulations under § 22a-20, Paragraph 30 of the plaintiff's amended complaint of September 12, 1994 alleges that:
 30. The plaintiff is statutorily and legislatively aggrieved pursuant to the C.G.S., § 22a-19
for the purposes of raising environmental issues by the decision of the [Commission] in granting the permit in that:
 f. The Regulations [of the Commission] are inadequate for protection, preservation and enhancement of the public trust in the water in that they lack any standards or criteria for determining, assessing and evaluating water-quality impacts.
CT Page 4714
Other than the quoted excerpt from the amended complaint, and similar conclusionary statements in briefs filed by the plaintiff, the record before the Commission and the proceedings in this appeal are without support for the plaintiff's claim that the Commission's regulations are inadequate. In the absence of evidence or compelling argument in either forum in support of that claim, no finding of inadequacy can be, or is, made.
CONCLUSION
The appeal is denied.