# ROBERT FROMER *v.* FREEDOM OF INFORMATION COMMISSION ET AL.
## (AC 25718)

Flynn, DiPentima and McLachlan, Js.

Argued March 22—officially released July 5, 2005

*Robert Fromer*, pro se, the appellant (plaintiff).

*Victor R. Perpetua*, appellate attorney, with whom, on the brief, was *Mitchell W. Pearlman*, general counsel, for the appellee (named defendant).

*Paul S. McCarthy*, assistant attorney general, with whom, on the brief, were *Richard Blumenthal*, attorney general, and *Richard J. Lynch*, assistant attorney general, for the appellee (defendant University of Connecticut).

*Opinion*

DiPENTIMA, J. The pro se plaintiff, Robert Fromer, appeals from the judgment of the trial court dismissing his appeal from the decision of the defendant freedom of information commission (commission), which denied his request for electronic copies of the Microsoft PowerPoint presentations of various instructors in the master gardener program at the defendant University of Connecticut (university). The plaintiff claims that the court incorrectly concluded that (1) the instructors of the university's master gardener program are not public agencies within the meaning of General Statutes § 1-200 (1), (2) the instructors' PowerPoint presentations are not "public records or files" as defined by General Statutes § 1-200 (5) and (3) the commission's failure to rule on his request to issue subpoenas was proper. We affirm the judgment of the trial court.

The court's memorandum of decision reveals the following undisputed facts. "Between the months of January and May, 2002, the plaintiff . . . who was enrolled in the master gardener program at the [u]niversity . . . requested various instructors of that program to provide him with copies of certain PowerPoint presentation files, either on computer disks or as e-mail attachments. . . . Paper copies of these presentations had been distributed to the attendees of the classes, including the plaintiff, but no electronic copies were provided. . . . All but one of these requests were denied. . . . After his requests to the individual instructors were denied, the plaintiff brought his request to Cindy Wyskiwicz, the head of the master gardener program, who referred him to Roger Adams, the assistant director of the department of cooperative extension. . . . The plaintiff then made the same request to Adams, who denied his request. . . . On May 28, 2002, after his requests were denied, the plaintiff filed a letter of complaint with the commission, alleging that the master gardener program instructors violated the Freedom of Information Act [(act), General Statutes § 1-200 et seq.] by refusing to provide copies of the PowerPoint presentations on computer disks or as e-mail attachments. . . .

"On October 22, 2002, an administrative hearing was held before Dennis O'Connor, hearing officer of the commission. . . . Thereafter, the hearing officer drafted a proposed final decision to dismiss the complaint, a copy of which was transmitted to the plaintiff on or about May 6, 2003. . . . The commission adopted its final decision at its regular meeting on May 14, 2003, and mailed it to the parties on May 21, 2003." (Citations omitted.) From that judgment, the plaintiff appealed to the Superior Court pursuant to General Statutes §§ 1-206 (d) and 4-183 (a). By memorandum of decision filed July 27, 2004, the court dismissed the plaintiff's appeal, and this appeal followed.

Before addressing the plaintiff's claims on appeal, we first note the applicable standard of review. "Judicial review of [an administrative agency's] action is governed by the Uniform Administrative Procedure Act (General Statutes, c. 54, §§ 4-166 through 4-189) and the scope of that review is very restricted. . . . With regard to questions of fact, it is neither the function of the trial court nor of this court to retry the case or to substitute its judgment for that of the administrative agency. . . . Judicial review of the conclusions of law reached administratively is also limited. The court's ultimate duty is only to decide whether, in light of the evidence, the [agency] has acted unreasonably, arbitrarily, illegally, or in abuse of its discretion. . . . Although the interpretation of statutes is ultimately a question of law . . . it is the well established practice of this court to accord great deference to the construction given [a] statute by the agency charged with its enforcement. . . . Conclusions of law reached by the administrative agency must stand if the court determines that they resulted from a correct application of the law to the facts found and could reasonably and logically follow from such facts." (Citations omitted; internal quotation marks omitted.) *State Board of Labor Relations* v. *Freedom of Information Commission*, 244 Conn. 487, 493–94, 709 A.2d 1129 (1998). Finally, "[a]n agency's factual determination must be sustained if it is reasonably supported by substantial evidence in the record taken as a whole." *Rocque* v. *Freedom of Information Commission*, 255 Conn. 651, 659, 774 A.2d 957 (2001).

I

The plaintiff first claims that the instructors of the university's master gardener program constitute public agencies within the meaning of § 1-200 (1).[1] We disagree.

[1] General Statutes § 1-200 (1) provides: " 'Public agency' or 'agency' means: (A) Any executive, administrative or legislative office of the state or any

Our Supreme Court was first asked to construe the term "public agency" in *Board of Trustees* v. *Freedom of Information Commission,* 181 Conn. 544, 553, 436 A.2d 266 (1980), in which it adopted the "functional equivalent" test to determine whether an entity is a public agency. Application of that test involves a consideration of four criteria: (1) whether the entity performs a governmental function; (2) the level of government funding; (3) the extent of government involvement or regulation; and (4) whether the entity was created by the government. Id., 554. The court subsequently explained that "[a]ll relevant factors are to be considered cumulatively, with no single factor being essential or conclusive." (Internal quotation marks omitted.) *Connecticut Humane Society* v. *Freedom of Information Commission,* 218 Conn. 757, 761, 591 A.2d 395 (1991). Further, the court in *Board of Trustees* noted that "[a] case by case application of the factors noted above is best suited to ensure that the general rule of disclosure underlying this state's [act] is not undermined by nominal appellations which obscure functional realities." *Board of Trustees* v. *Freedom of Information Commission,* supra, 555–56.

In its thorough memorandum of decision, the court applied the four criteria outlined in *Board of Trustees.* It concluded: "[T]he instructors are not the functional equivalent of public agencies . . . because (1) [they]

political subdivision of the state and any state or town agency, any department, institution, bureau, board, commission, authority or official of the state or of any city, town, borough, municipal corporation, school district, regional district or other district or other political subdivision of the state, including any committee of, or created by, any such office, subdivision, agency, department, institution, bureau, board, commission, authority or official, and also includes any judicial office, official, or body or committee thereof but only with respect to its or their administrative functions; (B) Any person to the extent such person is deemed to be the functional equivalent of a public agency pursuant to law; or (C) Any 'implementing agency', as defined in section 32-222."

do not perform a 'governmental function' within the definition under § 1-200 (11); (2) government funding received was in consideration for the services provided as employees of the university . . . and the instructors were not paid to develop PowerPoint presentations . . . (3) the government does not control [their] day-to-day . . . activities as instructors, and they were not required to use electronic presentations or handouts . . . and (4) the instructors were not created by government; they are employees of the university. Even if . . . the instructors were created by the government insofar as their positions were created by a government agency, that fact alone is insufficient for [them] to meet the definition of a public agency . . . ."[2] (Citations omitted.)

Having carefully reviewed the record, we agree with the conclusion of the trial court. This court has stated that "[t]he key to determining whether an entity is a government agency or merely a contractor with the government is whether the government is really involved in the core of the program." (Internal quotation marks omitted.) *Domestic Violence Services of Greater New Haven, Inc.* v. *Freedom of Information Commission*, 47 Conn. App. 466, 475, 704 A.2d 827 (1998). Like the plaintiff in *Domestic Violence Services of Greater New Haven, Inc.*, the instructors have no power to govern, to regulate or to make decisions affecting government; they simply provide instruction to students pursuant to their contractual obligation. See id. Furthermore, performance of their duties is not subject to governmental review. See *Connecticut Humane Society* v.

---

[2] Although the General Assembly in 2001 added General Statutes § 1-200 (11), which defines "governmental function," the plaintiff conceded at trial that the definition does not apply to the instructors. "Our rules of procedure do not allow a [party] to pursue one course of action at trial and later, on appeal, argue that a path he rejected should now be open to him. . . . To rule otherwise would permit trial by ambuscade." (Internal quotation marks omitted.) *State* v. *Colon*, 272 Conn. 106, 246, 864 A.2d 666 (2004).

*Freedom of Information Commission*, supra, 218 Conn. 765. Balancing the four factors of the functional equivalent test, we hold that in light of the reliable, probative and substantial evidence in the record as a whole and as a matter of law, the court properly concluded that the instructors are not public agencies.

II

The plaintiff next contends that the instructors' PowerPoint presentations are "public records or files" as defined by § 1-200 (5). This claim, too, misses the mark.

The general rule under the act is disclosure. *Wilson* v. *Freedom of Information Commission*, 181 Conn. 324, 329, 435 A.2d 353 (1980). Accordingly, General Statutes § 1-210 (a) provides in relevant part: "Except as otherwise provided by any federal law or state statute, all records maintained or kept on file by any public agency . . . shall be public records and every person shall have the right to (1) inspect such records promptly . . . ." Furthermore, General Statutes § 1-212 (a) provides in relevant part: "Any person applying in writing shall receive, promptly upon request, a plain or certified copy of any public record. . . ." The term "public records" is defined in § 1-200 (5) as "any recorded data or information relating to the conduct of the public's business prepared, owned, used, received or retained by a public agency, or to which a public agency is entitled to receive a copy by law or contract under section 1-218, whether such data or information be handwritten, typed, tape-recorded, printed, photostated, photographed or recorded by any other method."

Adams, the assistant director of the department of cooperative extension, testified during the October 22, 2002 hearing before the commission. As the court recounted: "Adams testified that the cooperative extension program does not retain the PowerPoint presenta-

tion files on disk at its office. . . . He also testified that only the course instructor retains the PowerPoint presentation files. . . . Further, he testified that there is no requirement for the PowerPoint presentation files to be placed on file or maintained by a department at the university. . . . Also, he testified that any educational materials developed by the teachers are the intellectual property of those teachers, and it is the decision of each instructor whether to provide the PowerPoint presentation files to a student. . . . In addition, he testified that the course material contained in the PowerPoint presentation files for the master gardener program do not pertain to the public's business; it relates to gardening and landscape management. Finally, he testified that the instructors are not required to use handouts or electronic presentations."[3] (Citations omitted.) The plaintiff presented no evidence that contradicted Adams' testimony.

We afford considerable weight to the factual and discretionary determinations of administrative agen-

---

[3] The plaintiff also contends that the PowerPoint presentations are not the intellectual property of the instructors. He cites no Connecticut authority for that assertion. Moreover, his claim runs contrary to General Statutes § 10a-110g. Titled "Rights as to products of authorship," the statute provides that "[t]he provisions of sections 10a-110 to 10a-110g, inclusive, shall not entitle the university or the foundation to claim any literary, artistic, musical or other product of authorship covered by actual or potential copyright under the laws of the United States; but the university and the foundation shall each be authorized to make and enforce any contract, express or implied, which it may make with reference to any such subject matter." That statute suggests that, unless contracted for otherwise, the instructor retains authorship rights in copyrightable work product.

Notably, the plaintiff has indicated his intention to utilize the instructors' PowerPoint presentations for his own commercial purposes. In an e-mail correspondence to one of the instructors dated April 7, 2002, he stated: "I am in the master gardener program and received a copy of your PowerPoint presentation for the next class in Vernon. I am an environmental consultant who often testifies on water quality issues. Your presentation is excellent *for my professional use.* Would you be kind enough to send me your presentation as an email attachment." (Emphasis added.)

cies. *Commission on Human Rights & Opportunities* v. *Truelove & Maclean, Inc.*, 238 Conn. 337, 351, 680 A.2d 1261 (1996). In the present case, the commission concluded that the PowerPoint presentations "are not 'records maintained or kept on file' by any of the [defendants] as public agencies, within the meaning of § 1-210 (a) . . . . It is also found that the [PowerPoint presentations] were not 'prepared, owned, used, received or retained' by the [defendant] university or its administration, within the meaning of § 1-200 (5) . . . ." The commission reached a similar result in *Edelman* v. *Superintendent of Schools*, Docket No. FIC 1999-408 (March 22, 2000). The plaintiff in *Edelman* filed a complaint with the commission seeking access to inspect the lesson plans for various high school courses. The commission dismissed the complaint, concluding that "the requested lesson plans are not 'records maintained or kept on file' by any of the [defendants] or by any public agency, within the meaning of § 1-210 (a)," and further that "the requested lesson plans are not 'prepared, owned, used, received or retained' by the [defendants], within the meaning of § 1-200 (5) . . . ." Because the record contains substantial evidence that the PowerPoint presentations were not prepared, owned, used, received or retained by the university, the court properly upheld the commission's determination.

The plaintiff argues that because PowerPoint presentations are not among the exemptions enumerated in § 1-210 (b), they are subject to disclosure pursuant to § 1-210 (a). The flaw in that argument is the assumption that PowerPoint presentations are public records. See General Statutes §§ 1-210 and 1-212. Before considering whether particular materials are exempt under § 1-210 (b), it must first be determined that those materials are indeed public records. In neither of the underlying proceedings did the plaintiff provide a basis for such a

determination. Accordingly, the court properly rejected his claim.

## III

The plaintiff's final claim challenges the commission's failure to rule on his request to issue subpoenas. At the administrative hearing, the plaintiff expressly abandoned that claim: "[T]he [defendants, of whom] I may want to ask questions, they're not here today and, you know, I could request a subpoena to have them here. I'm not going to do that at this point in time . . . ."[4] We have explained that "[w]aiver is an intentional relinquishment or abandonment of a known right or privilege. . . . It involves the idea of assent, and assent is an act of understanding. . . . The rule is applicable that no one shall be permitted to deny that he intended the natural consequences of his acts and conduct. . . . In order to waive a claim of law it is not

---

[4] We note that while not represented by a lawyer licensed to practice in this state, the plaintiff is not an inexperienced pro se litigant. See *Gardiner* v. *Conservation Commission*, 222 Conn. 98, 608 A.2d 672 (1992); *Fromer* v. *Commissioner of Environmental Protection*, 70 Conn. App. 903, 798 A.2d 1008, cert. denied, 261 Conn. 908, 804 A.2d 212 (2002); *Fromer* v. *Dept. of Economic Development*, 43 Conn. App. 915, 684 A.2d 284 (1996), cert. denied, 239 Conn. 960, 688 A.2d 327 (1997); *Fromer* v. *Freedom of Information Commission*, 36 Conn. App. 155, 649 A.2d 540 (1994); *Fromer* v. *Lombardi*, 33 Conn. App. 910, 633 A.2d 741 (1993); *Fromer* v. *Two Hundred Post Associates*, 32 Conn. App. 799, 631 A.2d 347 (1993); *Fromer* v. *Greenscape of Salem*, 26 Conn. App. 944, 601 A.2d 569 (1992); *Fromer* v. *Country Club of New England Group Ltd. Partnership*, 26 Conn. App. 942, 601 A.2d 567 (1992); *Fromer* v. *Tree Warden*, 26 Conn. App. 599, 602 A.2d 1060 (1992); *Fromer* v. *Boyer-Napert Partnership*, 26 Conn. App. 185, 599 A.2d 398 (1991); *Fromer* v. *Commissioner of Environmental Protection*, judicial district of New Britain, Docket No. 499825 (May 1, 2001); *Fromer* v. *Georgetown Village Assn., Inc.*, judicial district of New London, Docket No. 530538 (July 1, 1998); *Fromer* v. *Dept. of Economic Development*, judicial district of New London, Docket No. 537237 (March 15, 1996); *Fromer* v. *Inland Wetlands & Watercourses Commission*, judicial district of New London, Docket No. 531979 (June 10, 1996) (17 Conn. L. Rptr. 259); *Fromer* v. *Tree Warden*, judicial district of New London, Docket No. 515752 (May 30, 1991); *Fromer* v. *New London*, judicial district of New London, Docket No. 516239 (May 30, 1991).

necessary . . . that a party be certain of the correctness of the claim and its legal efficacy. It is enough if he knows of the existence of the claim and of its reasonably possible efficacy." (Citations omitted; internal quotation marks omitted.) *Gagne* v. *Vaccaro*, 80 Conn. App. 436, 445–46, 835 A.2d 491 (2003), cert. denied, 268 Conn. 920, 846 A.2d 881 (2004). His claim thus fails.

The judgment is affirmed.

In this opinion the other judges concurred.