GROTON POLICE DEPARTMENT *v.* FREEDOM OF
INFORMATION COMMISSION ET AL.
(AC 27389)
(AC 27390)

Schaller, McLachlan and West, Js.

---

Argued April 16—officially released October 9, 2007

*Victor R. Perpetua*, appellate attorney, for the appellant in AC 27389 (named defendant).

*James W. Parker,* for the appellant in AC 27390 (defendant S).

*Michael P. Carey,* for the appellee (plaintiff).

*Opinion*

SCHALLER, J. These two appeals arise from the judgment of the trial court sustaining the administrative appeal of the plaintiff, the town of Groton police department. In both appeals, the defendants, the freedom of information commission (commission) and S,[1] claim that the court improperly concluded that police records pertaining to the plaintiff's investigation of the alleged sexual abuse of S's minor child were exempt from disclosure under the state Freedom of Information Act (act), General Statutes § 1-200 et seq. We affirm the judgment of the trial court.

The following factual and procedural history is relevant to our resolution of the defendants' appeals. On November 18, 1998, S requested a copy of the police reports concerning allegations that her minor child had been sexually assaulted. The plaintiff denied her request on the ground that the police reports contained uncorroborated allegations of criminal activity.[2] On December 15, 1998, S filed a complaint with the commission. The hearing officer agreed with the plaintiff and issued a report recommending that the complaint be dismissed. The commission conducted an in camera inspection

[1] In accordance with our policy of protecting the privacy interests of the victims of sexual abuse, we decline to identify the victim or others through whom the victim's identity may be ascertained. See General Statutes § 54-86e.

[2] General Statutes § 1-210 (b) provides in relevant part: "Nothing in the Freedom of Information Act shall be construed to require disclosure of . . . (3) Records of law enforcement agencies not otherwise available to the public which records were compiled in connection with the detection or investigation of crime, if the disclosure of said records would not be in the public interest because it would result in the disclosure of . . . (G) uncorroborated allegations subject to destruction pursuant to section 1-216 . . . ."

and subsequently ordered the plaintiff to disclose the police reports to S, finding that the allegations were corroborated.

The plaintiff commenced an administrative appeal to the Superior Court.[3] On February 13, 2001, the court, *Dyer, J.,* issued a memorandum of decision remanding the matter to the commission. The court, sua sponte, raised the applicability of General Statutes § 17a-101k (a), which provides in relevant part: "The Commissioner of Children and Families shall maintain a registry of the commissioner's findings of abuse or neglect of children . . . . *The information contained in the registry and any other information relative to child abuse, wherever located, shall be confidential, subject to such statutes and regulations governing their use and access as shall conform to the requirements of federal law or regulations.* Any violation of this section or the regulations adopted by the commissioner under this section shall be punishable by a fine of not more than one thousand dollars or imprisonment for not more than one year." (Emphasis added.)

The court concluded that "the issue must be resolved because of the important public policy of protecting the welfare of children, and because the ordered disclosure may be violative of the law mandating the confidentiality of child abuse records wherever located." (Internal quotation marks omitted.) Nevertheless, because the applicability of § 17a-101k had not been argued or considered, the court remanded the matter for further proceedings.

Following the remand order, the hearing officer concluded that § 17a-101k exempted the record from disclosure and recommended that S's complaint be

---

[3] See General Statutes §§ 1-206 (d) and 4-183 (a).

dismissed. The commission rejected the hearing officer's report, as well as a second report that also recommended dismissing S's complaint. On December 23, 2004, the hearing officer issued a third report, this time recommending that the record be released in a redacted form. On February 9, 2005, the commission voted to adopt the hearing officer's third report.

The commission found that the police records sought by S constituted "information relative to child abuse, wherever located" within the meaning of § 17a-101k (a). It further found that because S, the parent of the victim, requested the information, there was an implied waiver of the confidentially requirement of § 17a-101k. The commission also determined that the allegations contained in the report were corroborated. Accordingly, the commission concluded that the plaintiff improperly had withheld the police report and that it should have been released, subject to certain redactions.

In a petition filed March 30, 2005, the plaintiff appealed to the Superior Court, arguing that the commission's order to release the police reports should be vacated. On January 31, 2006, the court, *Pinkus, J.,* issued a memorandum of decision sustaining the plaintiff's appeal. The court concluded that the commission improperly had determined that there had been an implied waiver of § 17a-101k. The court further was concerned that "the implied waiver of confidentiality, if allowed, would open these records to members of the general public." These appeals followed.

I

It will be helpful to set forth the legal principles that guide the resolution of both appeals before us. Our legislature passed the act in 1975. *Rules Committee of the Superior Court* v. *Freedom of Information Commission,* 192 Conn. 234, 240, 472 A.2d 9 (1984). The act is "our right-to-know law, providing for disclosure of

public information . . . ." (Internal quotation marks omitted.) *Chapin* v. *Freedom of Information Commission*, 22 Conn. App. 316, 320, 577 A.2d 300, cert. denied, 216 Conn. 814, 580 A.2d 56 (1990). Our Supreme Court has "stated that the [act] expresses a strong legislative policy in favor of the open conduct of government and free public access to government records. . . . At the time of its unanimous passage by the General Assembly, the act was noted for making sweeping changes in the existing right to know law so as to mark a new era in Connecticut with respect to opening up the doors of city and state government to the people of Connecticut. . . . The general rule under the act is disclosure." (Citations omitted; internal quotation marks omitted.) *Board of Trustees* v. *Freedom of Information Commission*, 181 Conn. 544, 550, 436 A.2d 266 (1980); see also *Chairman* v. *Freedom of Information Commission*, 217 Conn. 193, 196, 585 A.2d 96 (1991) (act makes disclosure of public records statutory norm).

Our legislature, however, has balanced this general rule with the need to exempt certain records from disclosure to the public. See, e.g., *Batte-Holmgren* v. *Commissioner of Public Health*, 281 Conn. 277, 302 n.14, 914 A.2d 996 (2007). General Statutes § 1-210 (b) enumerates various exemptions from disclosure.[4] Additionally, documents that are not "public records" are not subject to disclosure pursuant to § 1-210 (a). See *Fromer* v. *Freedom of Information Commission*, 90 Conn. App. 101, 109, 875 A.2d 590 (2005). Finally, as provided by the first sentence of § 1-210 (a), the act recognizes that federal law and other state statutes may exclude certain records. See *Commissioner* v. *Freedom of Information Commission*, 204 Conn. 609, 621–22, 529 A.2d 692 (1987).

---

[4] For example, if the disclosure of personnel and medical facts would result in an invasion of personal privacy, then such records are exempt from the act. General Statutes § 1-210 (b) (2).

We now set forth the applicable standard of review. "Ordinarily, [o]ur resolution of [administrative appeals] is guided by the limited scope of judicial review afforded by the Uniform Administrative Procedure Act; General Statutes § 4-166 et seq.; to the determinations made by an administrative agency. [W]e must decide, in view of all the evidence, whether the agency, in issuing its order, acted unreasonably, arbitrarily or illegally, or abused its discretion. . . . Conclusions of law reached by the administrative agency must stand if the court determines that they resulted from a correct application of the law to the facts found and could reasonably and logically follow from such facts. . . . Although the interpretation of statutes is ultimately a question of law . . . it is the well established practice of this court to accord great deference to the construction given [a] statute by the agency charged with its enforcement. . . .

"A reviewing court, however, is not required to defer to an improper application of the law. . . . It is the function of the courts to expound and apply governing principles of law. . . . We previously have recognized that the construction and interpretation of a statute is a question of law for the courts, where the administrative decision is not entitled to special deference. . . . Questions of law [invoke] a broader standard of review than is ordinarily involved in deciding whether, in light of the evidence, the agency has acted unreasonably, arbitrarily, illegally or in abuse of its discretion. . . . Because this case forces us to examine a question of law, namely, the construction and interpretation of [statutes] as well as the standard to be applied, our review is de novo." (Citations omitted; internal quotation marks omitted.) *Director, Retirement & Benefits Services Division* v. *Freedom of Information Commission*, 256 Conn. 764, 770–72, 775 A.2d 981 (2001). In

other words, the issue before us is one of statutory construction.

Our Supreme Court previously has instructed that "in construing statutes, [the] fundamental objective is to ascertain and give effect to the apparent intent of the legislature. . . . In seeking to discern that intent, we look to the words of the statute itself, to the legislative history and circumstances surrounding its enactment, to the legislative policy it was designed to implement, and to its relationship to existing legislation and common law principles governing the same general subject matter." (Internal quotation marks omitted.) *Loughlin* v. *Loughlin*, 280 Conn. 632, 641–42, 910 A.2d 963 (2006); *Tracy* v. *Scherwitzky Gutter Co.*, 279 Conn. 265, 273, 901 A.2d 1176 (2006). "In seeking to determine that meaning, General Statutes § 1-2z directs us first to consider the text of the statute itself and its relationship to other statutes. If, after examining such text and considering such relationship, the meaning of such text is plain and unambiguous and does not yield absurd or unworkable results, extratextual evidence of the meaning of the statute shall not be considered." (Internal quotation marks omitted.) *Kinsey* v. *Pacific Employers Ins. Co.*, 277 Conn. 398, 405, 891 A.2d 959 (2006); *Carmel Hollow Associates Ltd. Partnership* v. *Bethlehem*, 269 Conn. 120, 129, 848 A.2d 451 (2004).

"*Courts may not* by construction supply omissions . . . or *add exceptions merely because it appears that good reasons exist for adding them.* . . . The intent of the legislature, as [our appellate courts have] repeatedly observed, is to be found not in what the legislature meant to say, but in the meaning of what it did say. . . . *It is axiomatic that the court itself cannot rewrite a statute to accomplish a particular result. That is a function of the legislature.*" (Emphasis added; internal quotation marks omitted.) *Doe* v. *Norwich Roman Catholic Diocesan Corp.*, 279 Conn. 207, 216, 901 A.2d 673

(2006). Mindful of these tenets of statutory construction, we turn to the specifics of each appeal.

## II

## AC 27390

In the appeal designated AC 23790, S challenges the decision of the court sustaining the plaintiff's appeal. Specifically, S argues that §§ 17a-101k and 1-210 (b) (3) (F) both seek to maintain confidentiality concerning child abuse records and, therefore, must be read together to create a consistent body of law. She further maintains that the court interpreted § 17a-101k too broadly by concluding that the police records were confidential and not subject to disclosure under the act. We are not persuaded.

As we noted previously, § 1-210 (b) sets forth certain exemptions from the general rule of public disclosure under the act. Specifically, § 1-210 (b) provides in relevant part: "Nothing in the Freedom of Information Act shall be construed to require disclosure of . . . (3) Records of law enforcement agencies not otherwise available to the public which records were compiled in connection with the detection or investigation of crime, if the disclosure of said records would not be in the public interest because it would result in the disclosure of . . . (F) the name and address of the victim of a sexual assault under section 53a-70, 53a-70a, 53a-71, 53a-72a, 53a-72b or 53a-73a, or injury or risk of injury, or impairing of morals under section 53-21, or of an attempt thereof . . . ."

Section 17a-101k provides in relevant part that any information, wherever located, regarding information of child abuse shall be confidential, subject to federal law and regulations. This statutory language has not been the subject of substantial judicial interpretation. Our Supreme Court has stated that "[a]ny information

that is gathered concerning the reports of suspected abuse . . . is prohibited from public disclosure." *Ward* v. *Greene*, 267 Conn. 539, 553–54, 839 A.2d 1259 (2004).

The plaintiff refers to the commission's prior consideration of the scope of § 17a-101k. For example, in *Pflederer* v. *Dept. of Public Health*, FIC 1997-230 (February 11, 1998), the commission stated that § 17a-101k provides "*a broad grant of confidentiality* with respect to information pertaining to child abuse." (Emphasis added.) See also *LaPointe* v. *Dept. of Human Resources*, FIC 93-213 (June 22, 1994) (concluding identical language in General Statutes [Rev. 1995] § 17a-101 [g] constituted "broad grant of confidentiality" as to information pertaining to child abuse); *DeRosa* v. *Dept. of Health Services*, FIC 92-12 (February 26, 1992) (same). The plaintiff contends that the commission's interpretation of language contained in § 17a-101k in the present case to allow for disclosure is contrary to these decisions.

S essentially argues that the court's interpretation of § 17a-101k creates a conflict with § 1-210 (b) (3) (F) and seeks to "nullify the commissioner's clear authority . . . to determine whether the disclosure of certain law enforcement records is permissible as long as the 'names and addresses of the victim of injury or risk of injury' are not disclosed." Put another way, S claims that in order to effectuate both statutes, the commission must balance the two statutes. In our view, however, the court properly determined that the mandate set forth in § 17a-101k controlled the resolution of the plaintiff's appeal.

The statutes in question, although overlapping in some respects, afford different protection from disclosure to different classes of persons. First, § 1-210 (b) (3) (F) prevents disclosure, under the act, of the names and addresses of *any* victim of a sexual assault under

General Statutes §§ 53a-70, 53a-70a, 53a-71, 53a-72a, 53a-72b or 53a-73a, *regardless of age*, whereas the confidentiality requirement contained in § 17a-101k offers protection only to children whom have been abused. Second, § 1-210 (b) (3) (F) prevents the disclosure of the names and addresses of victims of sexual assault and risk of injury unconditionally, while the protection afforded by § 17a-101k is subject to conditions set forth in federal law.

In our view, § 17a-101k falls within the opening sentence of § 1-210 (a), which provides in relevant part that "[e]xcept as otherwise provided by any federal law or state statute, all records maintained or kept on file by any public agency . . . shall be public records . . . ." General Statutes § 1-210 (a). In other words, because § 17a-101k mandates confidentiality of information regarding child abuse, records of child abuse, wherever located, are exempted from the general rule of disclosure.[5] We conclude, therefore, that the court properly interpreted the relevant statutes and concluded that the police records sought by S were not subject to disclosure.

### III

### AC 27389

In the appeal designated AC 27389, the commission appeals from the decision of the court sustaining the plaintiff's appeal. Specifically, the commission argues that the court should have concluded that the confidentiality provision of § 17a-101k was implicitly waived by S when she requested the police records. We disagree.

---

[5] "The [commission] has full authority to determine the existence of public records and the propriety of their disclosure." *Board of Education* v. *Freedom of Information Commission*, 208 Conn. 442, 454, 545 A.2d 1064 (1988); see also *Perkins* v. *Freedom of Information Commission*, 228 Conn. 158, 166, 635 A.2d 783 (1993).

At the outset, we note that our jurisprudence recognizes the applicability of waiver with respect to the act and the disclosure of information. For example, General Statutes § 1-214 (b) provides in relevant part: "Whenever a public agency receives a request to inspect or copy records contained in any of its employees' personnel or medical files and similar files and the agency reasonably believes that the disclosure of such records would legally constitute an invasion of privacy, the agency shall immediately notify in writing (1) each employee concerned, provided such notice shall not be required to be in writing where impractical due to the large number of employees concerned and (2) the collective bargaining representative, if any, of each employee concerned. . . ."[6] General Statutes § 1-214 (c) affords such an employee the opportunity to file a written objection; otherwise, the information is subject to disclosure. Furthermore, the employee may authorize disclosure of the information, even if his or her collective bargaining representative has submitted a written objection. General Statutes § 1-214 (c).

Another example of waiver in the context of the act is found in General Statutes § 10-151c. This statute exempts records of teacher performance and evaluation from disclosure under the act because they are not

---

[6] General Statutes § 1-210 (b) provides in relevant part: "Nothing in the Freedom of Information Act shall be construed to require disclosure of . . . (2) Personnel or medical files and similar files the disclosure of which would constitute an invasion of personal privacy . . . ."

Our Supreme Court has stated that "[t]he person claiming exemption based upon § 1-210 (b) (2) must meet a twofold burden of proof. First, the person claiming the exemption must establish that the files are personnel, medical or similar files. . . . Second, the person claiming the exemption under § 1-210 (b) (2) must also prove that disclosure of the files would constitute an invasion of personal privacy." (Citation omitted; internal quotation marks omitted.) *Director, Retirement & Benefits Services Division* v. *Freedom of Information Commission*, supra, 256 Conn. 773–74; see also *Perkins* v. *Freedom of Information Commission*, 228 Conn. 158, 168, 635 A.2d 783 (1993).

considered public records. It also expressly permits a teacher to waive the exemption. "Any records maintained or kept on file by any local or regional board of education which are records of teacher performance and evaluation shall not be deemed to be public records and shall not be subject to the provisions of section 1-210, *provided that any teacher may consent in writing to the release of such teacher's records by a board of education.* Such consent shall be required for each request for a release of such records. . . ." (Emphasis added.) General Statutes § 10-151c. In both examples, the subject of the records sought, rather than the requestor, has the authority to waive the nondisclosure protection.

The matter before us, however, presents an unusual situation in which the subject of the information sought and the requestor are the same person; S acted in a dual capacity as both the decision maker for her child and as a member of the general public seeking information. Mindful of this anomaly, we must determine whether S could implicitly waive the protections afforded to her child by the sweeping scope of § 17a-101k.

As a preliminary manner, it will be helpful to set forth the background regarding confidentiality of records of child abuse. Congress enacted the Child Abuse Prevention and Treatment Act, authorizing grants to states for child abuse and neglect prevention and treatment programs. See 42 U.S.C. § 5106a et seq.[7] One of the

---

[7] We note that 42 U.S.C. § 5106a (b) (2) (A) provides in relevant part: "(v) methods to preserve the confidentiality of all records in order to protect the rights of the child and of the child's parents or guardians, including requirements ensuring that reports and records made and maintained pursuant to the purposes of this subchapter and subchapter III of this chapter shall only be made available to . . . (I) individuals who are the subject of the report; (II) Federal, State, or local government entities, or any agent of such entities, having a need for such information in order to carry out its responsibilities under law to protect children from abuse or neglect; (III) child abuse citizen review panels; (IV) child fatality review panels; (V) a

requirements in order for a state to be eligible for such a grant is a confidentiality provision. See 42 U.S.C. § 5106a (b) (2) (A) (v). This statute is implemented by regulations. See, e.g., *State* v. *Runge*, 317 Md. 613, 619, 566 A.2d 88 (1989); see also *Cure* v. *State*, 600 So. 2d 415, 417 (Ala. Crim. App.), cert. denied, 600 So. 2d 421 (1992). Specifically, 45 C.F.R. § 1340.14 (h) (i) (1) provides that "[t]he State must provide by statute that all records concerning reports and reports of child abuse and neglect are confidential and that their unauthorized disclosure is a criminal offense." The regulations further permit a state, in its discretion, to authorize by statute disclosure to a defined class of persons and agencies, including "[a] child named in the report or record alleged to have been abused or neglected or (as his/her representative) his/her guardian or guardian ad litem . . . ." 45 C.F.R. § 1340.14 (h) (i) (2) (ix).[8]

grand jury or court, upon a finding that information in the record is necessary for the determination of an issue before the court or grand jury; and (VI) other entities or classes of individuals statutorily authorized by the State to receive such information pursuant to a legitimate State purpose . . . ."

None of the parties argued or addressed the applicability of this statutory language in this court. Our Supreme Court recently has stated: "We long have held that, in the absence of a question relating to subject matter jurisdiction, the Appellate Court may not reach out and decide a case before it on a basis that the parties never have raised or briefed. *Fort Trumbull Conservancy, LLC* v. *Alves*, 262 Conn. 480, 522, 815 A.2d 1188 (2003) (*Borden, J.*, concurring and dissenting); see *Lynch* v. *Granby Holdings, Inc.*, 230 Conn. 95, 98–99, 644 A.2d 325 (1994). To do otherwise would deprive the parties of an opportunity to present arguments regarding those issues. *Lynch* v. *Granby Holdings, Inc.*, supra, 99." *Sabrowski* v. *Sabrowski*, 282 Conn. 556, 560, 923 A.2d 686 (2007); *State* v. *Dalzell*, 282 Conn. 709, 715, 924 A.2d 809 (2007).

[8] Section 1340.14 (h) (2) of title 45 of the Code of Federal Regulations provides: "If a State chooses to, it may authorize by statute disclosure to any or all of the following persons and agencies, under limitations and procedures the State determines:

"(i) The agency (agencies) or organizations (including its designated multidisciplinary case consultation team) legally mandated by any Federal or State law to receive and investigate reports of known and suspected child abuse and neglect; (ii) A court, under terms identified in State statute; (iii) A grand jury; (iv) A properly constituted authority (including its designated multidisciplinary case consultation team) investigating a report of known

Our legislature, in enacting § 17a-101k (a), used unrestricted language that states that "*any other infor-mation relative to child abuse, wherever located, shall be confidential*" and is only "subject to such regulations governing their use and access as shall conform to the requirements of federal law or regulation." In other words, the General Assembly has not employed the permissive discretion, as authorized by the federal gov-ernment, to allow for disclosure to any of the persons or agencies listed in the regulations.[9] Additionally, our

or suspected child abuse or neglect or providing services to a child or family which is the subject of a report; (v) A physician who has before him or her a child whom the physician reasonably suspects may be abused or neglected; (vi) A person legally authorized to place a child in protective custody when the person has before him or her a child whom he or she reasonably suspects may be abused or neglected and the person requires the information in the report or record in order to determine whether to place the child in protective custody; (vii) An agency authorized by a properly constituted authority to diagnose, care for, treat, or supervise a child who is the subject of a report or record of child abuse or neglect; (viii) A person about whom a report has been made, with protection for the identity of any person reporting known or suspected child abuse or neglect and any other person where the person or agency making the information available finds that disclosure of the information would be likely to endanger the life or safety of such person; (ix) A child named in the report or record alleged to have been abused or neglected or (as his/her representative) his/her guardian or guardian ad litem; (x) An appropriate State or local official responsible for administration of the child protective service or for oversight of the enabling or appropriat-ing legislation, carrying out his or her official functions; and (xi) A person, agency, or organization engaged in a bonafide research or evaluation project, but without information identifying individuals named in a report or record, unless having that information open for review is essential to the research or evaluation, the appropriate State official gives prior written approval, and the child, through his/her representative as cited in paragraph (i) of this section, gives permission to release the information."

[9] We note that § 49-5-40 (b) of the Official Code of Georgia Annotated (2006) provides: "Each and every record concerning reports of child abuse . . . which is in the custody of the department or other state or local agency is declared to be confidential, and access thereto is prohibited except as provided in Code Section 49-5-41 and Code Section 49-5-41.1." This expansive protection is similar to that afforded by General Statutes § 17a-101k.

Section 49-5-41 (c) of the of the Official Code of Georgia Annotated (2006) provides that "[t]he department or a county or other state or local agency may permit access to records concerning reports of child abuse and may

Supreme Court has stated that "[a]ny information that is gathered concerning the reports of suspected abuse . . . is prohibited from public disclosure." *Ward* v. *Greene*, supra, 267 Conn. 553–54.[10] Given this context, which clearly favors confidentiality, we now turn to the question of waiver.

We begin by addressing the status of S as a requestor of the records through the act. The commission found that S implicitly waived the confidentiality provision of § 17a-101k by requesting the police records of the alleged sexual abuse of her child. The issue of whether a record is disclosable under the act "does not depend in any way on the status or motive of the applicant for disclosure, because the act vindicates the public's right to know, rather than the rights of any individual." *Chief of Police* v. *Freedom of Information Commission*, 252 Conn. 377, 387, 746 A.2d 1264 (2000); see also *Pane* v. *Danbury*, 267 Conn. 669, 680, 841 A.2d 684 (2004) (legislature enacted act for benefit of general public,

---

release information from such records to the following persons or agencies when deemed appropriate by such department . . . (4) An agency or person having the legal custody, responsibility, or authorization to care for, treat, or supervise the child who is the subject of a report or record . . . ." The Georgia statutory scheme further provides an example of meeting the federal requirements and allowing access for parents of alleged victims of abuse. Our General Assembly may want to consider a similar framework to allow, in the appropriate circumstances, persons similarly situated to S access to such records.

[10] We note that § 17a-101-6 (a) of the Regulations of Connecticut State Agencies, governing the department of children and families, provides in relevant part: "(2) Additional persons eligible only for routine access to the registry include the following: (A) Any person named in the report or record who is alleged to be abused or neglected; if the person named in the report or record is a minor or is otherwise incompetent, his guardian ad litem or conservator; (B) A parent, guardian of other person responsible for the welfare of a child named in a report or record or their attorney except that the name or names of persons reporting the incidents of alleged abuse shall not be discharged . . . ." In other words, this regulation affords S access to information contained in the registry maintained by the department of children and families but does not extend to police reports pertaining to allegations of child abuse maintained by the plaintiff.

which desires information regarding conduct of its government); *Bona* v. *Freedom of Information Commission*, 44 Conn. App. 622, 630, 691 A.2d 1 (1997) (act provides public with right to know government information). It is clear, therefore, that S's status as the parent of the alleged victim is immaterial to the request for the police records under the act. We agree with the statement of the court that "S is not seeking the information as a parent." By invoking the act to request the records, S is not seeking the records as a parent but, rather, as a member of the general public. This case, therefore, is unlike the situation in which an employee or teacher, the subject of the requested information, waives nondisclosure protection. We conclude, therefore, that S's status as a parent, in the context of her request pursuant to the act, has no bearing on the issue of whether she had waived the confidentiality requirement of § 17a-101k and was therefore entitled to the police records. Additionally, we note that both S and the commission conceded that if the police reports were disclosed to her, they would be available to the general public. Under these circumstances, a decision by the commission recognizing waiver would be, in effect, allowing a member of the general public to waive the protection of § 17a-101k, which would be a bizarre result. "It is axiomatic that the law favors rational and sensible statutory construction, and that the courts interpret statutes to avoid bizarre or nonsensical results." (Internal quotation marks omitted.) *State* v. *Nixon*, 92 Conn. App. 586, 595 n.7, 886 A.2d 475 (2005); see *Blasko* v. *Commissioner of Revenue*, 98 Conn. App. 439, 457, 910 A.2d 219 (2006).[11]

---

[11] As we previously indicated, our law recognizes that information that is not available to the public may be disclosed after waiver by an individual. Unlike the situation involving an employee's personnel or medical file, or a teacher's evaluation, there is no established procedure for a determination of the validity of a purported waiver of § 17a-101k. For example, § 10-151c expressly states that a teacher may disclose his or her performance evaluations by writing to the board of education. There is no such provision in § 17a-101k. Additionally, our legislature has not provided access to records

We conclude, therefore, that the court properly determined that S could not waive the confidentiality provision set forth in § 17a-101k.

The judgment is affirmed.

In this opinion the other judges concurred.

of child abuse to any person or agency, despite the discretion to do so by the federal regulation. Finally, we note that the alleged victims are not the only parties protected by this statute; other persons named in such reports have privacy interests at stake as well. For example, our Supreme Court has stated that the confidentiality statute is likely designed to protect the accused abuser. See *Ward* v. *Greene,* supra, 267 Conn. 555. Depending on the facts and circumstances of each case, siblings, other family members, day care providers and those subjected to false or unsubstantiated allegations also may have privacy interests. It is clear that S's waiver could not include all of these parties.