EDWARD C. OKEKE *v.* COMMISSIONER
OF PUBLIC HEALTH
(AC 31054)

Bishop, Alvord and Borden, Js.

Argued March 15—officially released July 6, 2010

*Edward C. Okeke*, pro se, the appellant (plaintiff).

*Daniel Shapiro*, assistant attorney general, with whom, on the brief, was *Richard Blumenthal*, attorney general, for the appellee (defendant).

### Opinion

BISHOP, J. The plaintiff, Edward C. Okeke, appeals from the judgment of the trial court dismissing his appeal from the decision of the commissioner of public health (commissioner) denying his request to amend his son's birth certificate. On appeal, the plaintiff contends

that the court improperly determined that the commissioner correctly interpreted General Statutes § 19a-42 (d) (1). We conclude that the trial court properly dismissed the plaintiff's appeal and, therefore, we affirm the judgment.

The following undisputed facts and procedural history are relevant to the plaintiff's appeal. On May 25, 2000, a male child was born to the plaintiff and Tamara A. Shockley. The parties were not married at the time of the birth of the child and have never been married to each other. The parties executed an acknowledgement of paternity pursuant to General Statutes § 46b-172. Shockley affirmed the acknowledgement of paternity on May 26, 2000, and the plaintiff affirmed the acknowledgement on June 1, 2000. The name of the child on the paternity acknowledgement is stated as "Nnamdi Ikwunne Okeke."

While in the hospital, at some time after the child's birth, Shockley also completed a birth certificate worksheet. Initially, she entered the child's name on the worksheet as "Nnamdi Ikwunne Okeke." On May 30, 2000, however, Shockley called the hospital and requested that the child's name on the birth certificate worksheet be changed to "Nnamdi Okeke Shockley." In response, a hospital staff person changed the name on the acknowledgement of paternity form to "Nnamdi Okeke Shockley." On June 5, 2000, Shockley again called the hospital and requested that her son's name be changed on the birth certificate worksheet to "Nnamdi Ikwunne Shockley-Okeke." In response, a hospital staff person changed the name on the birth certificate worksheet to "Nnamdi Ikwanne Shockley-Okeke."[1] The acknowledgement of paternity indicating the child's

---

[1] Shockley testified that the different spelling of the child's middle name, "Ikwanne," was a clerical error. The child's correct middle name is not an issue in this appeal.

name as "Nnamdi Okeke Shockley," and the certificate
of live birth indicating the child's name as "Nnamdi
Ikwanne Shockley-Okeke," were filed with the depart-
ment of public health (department). The official birth
certificate of the child lists his name as "Nnamdi
Ikwanne Shockley-Okeke."

On April 13, 2007, the plaintiff filed with the depart-
ment an "[a]pplication for [a]mendment of [m]y [s]on's
[b]irth [c]ertificate." Pursuant to § 19a-42 (d) (1), the
plaintiff sought to amend the name on his son's birth
certificate by removing the mother's name, Shockley,
in accordance with the previously executed acknowl-
edgement of paternity.[2] Following an evidentiary hear-
ing, the hearing officer denied the plaintiff's application,
concluding that, pursuant to § 19a-41-9 (a) of the Regu-
lations of Connecticut State Agencies,[3] the plaintiff is
permitted to ask a registrar of vital statistics to make
a change to his son's name only if he has a certified
court order allowing the change. Because the plaintiff
did not present such a court order, he failed to meet
this requirement. The hearing officer also concluded
that the plaintiff did not meet the requirements of § 19a-
41-9 (b) of the Regulations of Connecticut State Agen-
cies because more than thirty days had passed since
the child's birth, the plaintiff was not a custodial parent
and he was not seeking to rectify a typographical or
clerical error.[4]

---

[2] According to the plaintiff, he did not learn of the name on his son's birth
certificate until May, 2001, when Shockley filed an application with the
Probate Court to change the child's first name.

[3] Section 19a-41-9 (a) of the Regulations of Connecticut State Agencies
provides in relevant part: "The local registrar of the town where a birth
occurred or the Department shall amend a name on a birth certificate when
the request for the amendment is accompanied by a certified copy of a
court order granting the legal name change. . . ."

[4] Section 19a-41-9 (b) of the Regulations of Connecticut State Agencies
provides in relevant part: "For up to 30 days following a registrant's birth,
a parent may request that the registrant's name be changed to correct an
obvious typographical or clerical error, by signing and presenting to the
local registrar of the town in which the birth occurred, the Parent Notice

In response to the plaintiff's motion for reconsideration, the hearing officer addressed the plaintiff's claim that he made pursuant to § 19a-42 (d) (1). The hearing officer concluded that the statute permits a change of a child's name on a birth certificate on the basis of an acknowledgement form only "if such paternity is not already shown on the birth certificate." Because paternity was already indicated on the birth certificate, the department's receipt of the acknowledgement of paternity form did not trigger an amendment to the birth certificate. The hearing officer accordingly denied the plaintiff's motion for reconsideration.

Thereafter, the plaintiff timely filed an administrative appeal with the Superior Court. The plaintiff did not take issue with any of the factual findings of the hearing officer but challenged the interpretation and application of § 19a-42 (d) (1), claiming that the commissioner must change the name on the birth certificate to the name indicated on the acknowledgement of paternity form.[5] Following a hearing, the court dismissed the plaintiff's appeal. This appeal followed.

Our standard of review is well established. "Ordinarily, [o]ur resolution of [administrative appeals] is guided by the limited scope of judicial review afforded by the Uniform Administrative Procedure Act; General Statutes § 4-166 et seq.; to the determinations made by an administrative agency. [W]e must decide, in view of all the evidence, whether the agency, in issuing its order, acted unreasonably, arbitrarily or illegally, or abused

issued by the birthing hospital. After said thirty-day period, a registrant, if over eighteen years old, or a custodial parent or legal guardian of the registrant, if the registrant is a minor, may request that the registrant's name be changed to correct or amend obvious typographical or clerical errors . . . ."

[5] The plaintiff did not take issue, in his appeal to the trial court, with the commissioner's determinations that he failed to comply with the requirements of § 19a-41-9 (a) and (b) of the Regulations of Connecticut State Agencies.

its discretion. . . . Conclusions of law reached by the administrative agency must stand if the court determines that they resulted from a correct application of the law to the facts found and could reasonably and logically follow from such facts. . . . Although the interpretation of statutes is ultimately a question of law . . . it is the well established practice of this court to accord great deference to the construction given [a] statute by the agency charged with its enforcement. . . .

"A reviewing court, however, is not required to defer to an improper application of the law. . . . It is the function of the courts to expound and apply governing principles of law. . . . We previously have recognized that the construction and interpretation of a statute is a question of law for the courts, where the administrative decision is not entitled to special deference. . . . Questions of law [invoke] a broader standard of review than is ordinarily involved in deciding whether, in light of the evidence, the agency has acted unreasonably, arbitrarily, illegally or in abuse of its discretion. . . . Because this case forces us to examine a question of law, namely, the construction and interpretation of [statutes] as well as the standard to be applied, our review is de novo." (Internal quotation marks omitted.) *Groton Police Dept.* v. *Freedom of Information Commission*, 104 Conn. App. 150, 156, 931 A.2d 989 (2007).

"The process of statutory interpretation involves the determination of the meaning of the statutory language as applied to the facts of the case, including the question of whether the language does so apply." (Internal quotation marks omitted.) *Renaissance Management Co.* v. *Connecticut Housing Finance Authority*, 281 Conn. 227, 231, 915 A.2d 290 (2007). "When construing a statute, [o]ur fundamental objective is to ascertain and give effect to the apparent intent of the legislature. . . . In

other words, we seek to determine, in a reasoned manner, the meaning of the statutory language as applied to the facts of [the] case, including the question of whether the language actually does apply. . . . In seeking to determine that meaning, General Statutes § 1-2z directs us first to consider the text of the statute itself and its relationship to other statutes. If, after examining such text and considering such relationship, the meaning of such text is plain and unambiguous and does not yield absurd or unworkable results, extratextual evidence of the meaning of the statute shall not be considered. . . . The test to determine ambiguity is whether the statute, when read in context, is susceptible to more than one reasonable interpretation." (Internal quotation marks omitted.) *Fairchild Heights, Inc.* v. *Amaro*, 293 Conn. 1, 8–9, 976 A.2d 668 (2009).

Accordingly, our interpretation of § 19a-42 (d) (1) begins with an examination of the relevant language of the statute. Section 19a-42 (d) (1) provides: "Upon receipt of (A) an acknowledgment of paternity executed in accordance with the provisions of subsection (a) of section 46b-172 by both parents of a child born out of wedlock, or (B) a certified copy of an order of a court of competent jurisdiction establishing the paternity of a child born out of wedlock, the commissioner shall include on or amend, as appropriate, such child's birth certificate to show such paternity *if paternity is not already shown on such birth certificate* and to change the name of the child if so indicated on the acknowledgment of paternity form or within the certified court order as part of the paternity action." (Emphasis added.)

The plaintiff contends that the phrase "to change the name of the child if so indicated on the acknowledgment of paternity form" essentially directs the commissioner to ensure that the name on the birth certificate corresponds to the name on the acknowledgement of paternity

form. When read in its entirety, however, we conclude that the plaintiff's contention is misplaced because the plaintiff ignores the triggering language that allows the commissioner to amend a birth certificate pursuant to § 19a-42 (d) (1): *"if paternity is not already shown on such birth certificate . . . ."* (Emphasis added.) General Statutes § 19a-42 (d) (1). The unambiguous language of the statute involves determinations of paternity and changing a child's name when it is determined that the biological father of the child is not listed, or is incorrectly listed, on the birth certificate. Here, paternity is already shown on the birth certificate and there has never been a question regarding the identity of the biological father. The plaintiff's argument is further belied by the acknowledgement of paternity form itself, which provides for changing the child's birth certificate in accordance with an acknowledgement of paternity. The acknowledgement form has a line that asks: "Change Child's Last Name On Birth Certificate." The form then has a block for "yes" and a block for "no." In this case, because neither box is checked, there is no indication that the name on the birth certificate should be changed to correspond with the name on the acknowledgement form.

Additionally, General Statutes § 7-36 (10) defines " '[a]mendment' " to mean to "(A) change or enter new information on a certificate of birth, marriage, death or fetal death, more than one year after the date of the vital event recorded in such certificate, in order to accurately reflect the facts existing at the time of the recording of the event, (B) create a replacement certificate of birth for matters pertaining to parentage and gender change, or (C) change a certificate of birth, marriage, death or fetal death to reflect facts that have changed since the time the certificate was prepared, including, but not limited to, a legal name change or a modification to a cause of death . . . ." Here, because the plaintiff

and Shockley are accurately listed as the biological parents of the child, there is no new information that needs to be added to the birth certificate to accurately reflect the facts existing at the time of the child's birth.

On the basis of the foregoing, we conclude that the court properly determined that the commissioner properly denied the plaintiff's application to amend his son's birth certificate.

The judgment is affirmed.

In this opinion ALVORD, J., concurred.

BORDEN, J., dissenting. I disagree with the majority that the trial court properly dismissed the appeal of the plaintiff, Edward C. Okeke, from the decision of the defendant, the commissioner of public health, denying the plaintiff's request to amend his son's birth certificate. I therefore dissent.

I first briefly note the procedural background of this case. In April, 2007, the plaintiff applied to the defendant for an amendment to his son's birth certificate pursuant to General Statutes § 19a-42 (d) (1).[1] The plaintiff alleged that his son had been born at Stamford Hospital on May 25, 2000; the acknowledgment of paternity executed by both parents in accordance with General Statutes § 46b-172 indicated his name as "Nnamdi Ikwunne Okeke" as agreed to by both parents; and the birth certificate, however, states his name as "Nnamdi Ikwanne Shockley-Okeke." He further alleged that he

[1] General Statutes § 19a-42 (d) (1) provides in relevant part: "Upon receipt of . . . an acknowledgment of paternity executed in accordance with the provisions of subsection (a) of section 46b-172 by both parents of a child born out of wedlock . . . the commissioner shall include on or amend, as appropriate, such child's birth certificate to show such paternity if paternity is not already shown on such birth certificate and to change the name of the child if so indicated on the acknowledgment of paternity form . . . ."

became aware of the incorrect name on the birth certificate when Tamara A. Shockley, the child's mother, petitioned the Stamford Probate Court to have their child's name changed to "Cameron Nnamdi Shockley-Okeke." The plaintiff objected, and the Probate Court denied the petition for a name change, the plaintiff further alleged, "as did the Stamford Superior Court, which determined that the child's name should be as stated in the Acknowledgment of Paternity. The case was appealed to the Appellate Court and then to the Supreme Court . . . where it was dismissed, leaving it judicially unresolved on the merits. My child's name on his birth certificate should be amended as indicated in the Acknowledgment of Paternity."

The defendant held an administrative hearing on the petition. Shockley was given notice of the hearing, and she attended and testified. The defendant denied the petition, and the court dismissed the plaintiff's subsequent appeal from that denial. This appeal followed.

Because the majority does not refer to certain critical—in my view—undisputed facts of this case, I take the liberty of stating the facts as determined by the administrative record. I also note that neither party disputes these facts in any way. These undisputed facts are as follows.

The plaintiff, a native of Nigeria, and Shockley, a native of Delaware, who at the time of the birth of their child were both attorneys employed by the United Nations, conceived a child in the months prior to January, 2000. On January 17, 2000, before the child's birth, the plaintiff and Shockley entered into an agreement that their son would be named "Nnamdi Ikwunne Okeke." The child was born on May 25, 2000. The plaintiff and Shockley were not married at the time of the child's birth and have never married. Shockley filled

out a "birth certificate worksheet" at the hospital, indicating that the child's name was to be as agreed in their January agreement and as stated in the acknowledgment of paternity form, namely, Nnamdi Ikwunne Okeke. This birth certificate worksheet is a form generated by and bearing the name of Stamford Hospital, and is not, as far as the regulations reflect, a form authorized by the department of public health (department). At the top of this form are the following legends: "The information below is required to complete your child's birth certificate. Completed forms must be given to your nurse before leaving the hospital. Are you married to the baby's father? Yes     No     .[2] If you are unmarried an Acknowledgment of Paternity must be completed for the father's name to appear on the birth certificate. The original of this form will be filed with Superior Court and [l]egally establishes a child's paternity. Both signatures [on the Acknowledgment of Paternity] must be notarized in the hospital. These forms are available from your nurse, Social Work Dept. . . . and Health Information Mgt. Dept. . . . . Note: These papers must be completed within 10 days of baby's birth." This form is addressed to the mother of a child and was signed only by Shockley.

At the hospital, Shockley signed an acknowledgment of paternity form on May 26, 2000, and the plaintiff signed the same form on June 1, 2000. Both signatures were sworn to and notarized. See General Statutes § 46b-172 (a), which requires that such acknowledgments be "executed and sworn to" by both parties. In accordance with their agreement, the name of the child was stated on the form as Nnamdi Ikwunne Okeke. This acknowledgment was then filed with the department pursuant to § 46b-172 (a) (3).[3]

---

[2] This "No" space was checked on Shockley's form.

[3] General Statutes § 46b-172 (a) (3) provides: "All written notices, waivers, affirmations and acknowledgments required under subdivision (1) of this subsection, and rescissions authorized under subdivision (2) of this subsection, shall be on forms prescribed by the Department of Public Health,

This form is prepared by the defendant under the authority of § 46b-172 (a) (3). Above Shockley's signature on the form is the following "Mother's Affirmation": "I freely and voluntarily consent to this Acknowledgment of Paternity. The man named above [namely, the plaintiff] is the biological father of this child. I have read, and have had read and explained to me, the rights and responsibilities on the back of this form, and I understand the contents.[4] I have had the opportunity to ask questions before I signed this form. A copy of this statement has been given to me." Above the plaintiff's signature is the following "Father's Acknowledgment": "I freely and voluntarily acknowledge that I am the biological father of the child named above. I accept the obligation to support this child. I understand that an order for child support may be entered. I waive my rights to a trial, a lawyer to represent me, and a genetic test to determine paternity. I have read, and have had read and explained to me, the rights and responsibilities on the back of this form,[5] and I understand the contents. I have had the opportunity to ask questions before I signed this form. A copy of this statement has been given to me." The parties left blank the blocks on the form that allowed them to indicate, by "yes" or "no," that the defendant should "change the child's last name on birth certificate." Right next to this block, however, is a block titled: "If yes, child's last name as it will appear on new birth certificate."

During the week after Shockley left the hospital, she learned that the plaintiff planned to move in with

---

provided such acknowledgment form includes the minimum requirements specified by the Secretary of the United States Department of Health and Human Services. All acknowledgments and rescissions executed in accordance with this subsection shall be filed in the paternity registry established and maintained by the Department of Public Health under section 19a-42a."

[4] The copies of the form in the record do not contain the material on the back of the form.

[5] See footnote 4 of this dissent.

another woman, a colleague of Shockley's at her work. She decided that the child " 'need[ed] to carry [her] name . . . .' " At some time after May 30, she telephoned the hospital and, at her request, the hospital staff changed the worksheet form so that the child's name would be Nnamdi Ikwanne Shockley-Okeke. This worksheet contains several middle names, namely, "Ikwunne," "Shockley" and "Okeke," all stricken out, followed by "Ikwanne" as the ultimate middle name,[6] and a last name, "Okeke," also stricken out and "Shockley-Okeke" written in above the strikeout. There are also two handwritten notations on the form: (1) "Mom called 6/5 @ 8:45 a.m.—added her last name to baby's last name"; and (2) "Mom called 6/7—last name to be just Shockley middle name Okeke."[7] There are also the following handwritten notations on the worksheet form: "Name change 3 [times] change in middle name and last name Mom informed of [illegible] delay" followed by a telephone number.[8]

The hospital staff did not notify the plaintiff of these alterations. Furthermore, Shockley did not inform the plaintiff that she had the hospital staff change the last name of the child from that to which the parties had agreed and which had been recorded by both parents on the acknowledgment of paternity.[9]

---

[6] Shockley testified at the administrative hearing that this misspelling of the child's middle name was a clerical error by the hospital staff, and that she did not intend to alter the child's middle name from "Ikwunne" to "Ikwanne."

[7] The record does not disclose why the hospital staff chose to comply with the first, but not the second, of these two telephonic requests of Shockley to alter their records.

[8] Shockley testified at the administrative hearing that she telephoned the hospital "about three times" on May 30 to discuss changing her child's name. This testimony may explain the handwritten notation indicating a name change three times.

[9] In fact, the plaintiff did not learn of the alteration of the records and the fact that his son's agreed upon name was not on the birth certificate until May, 2001, when he learned that Shockley had applied to the Probate Court for a further change of the child's name. Litigation ensued, which went all the way to the Supreme Court, but that litigation did not resolve

Using this altered worksheet, the hospital staff prepared and filed with the department the "certificate of live birth," an official form of the department, on which the child's name is given as "Nnamdi Ikwanne[10] Shockley-Okeke." It is this document that the plaintiff requests the defendant to amend pursuant to § 19a-42 (d) (1). Contrary to the majority, I conclude that the defendant has the authority and was obligated to do so under this statute as applied to the facts of this case.

I begin with some general comments about the naming of a child that I do not believe are controversial. The naming of a child is a supreme act of parental right; indeed, it is one of the first parental acts that parents perform upon a child's birth. And it is usually preceded by conversations and an agreement between the prospective parents about what that name should be. Moreover, where, as in the present case, both parents have so agreed, the naming is a joint parental act. Hence, the acknowledgment of paternity form that provides for the sworn, notarized signature of both parents. Thus, that supreme, joint parental act of naming their child should be honored by our statutes if at all possible.

I next turn to a brief summary of the facts of this case. Both parents agreed on the child's name; the mother filled out the hospital's birth certificate worksheet accordingly, and both parents, who are attorneys, signed and swore to the acknowledgment of paternity form giving the agreed upon name to the child, presumably read the detailed instructions on the form and had their signatures notarized. The plaintiff's acknowledgment specifically referred to "the child *named above*";

the issue of the child's proper name on his birth certificate. See *Shockley* v. *Okeke*, 280 Conn. 777, 912 A.2d 991 (2007). Thereafter, the plaintiff initiated these proceedings. Hence, the long delay in resolving the issue of the proper name on the child's birth certificate was not of the plaintiff's doing.

[10] Thus, the mistaken spelling of the child's middle name as "Ikwanne" rather than "Ikwunne" is now perpetuated in the official records of his birth.

(emphasis added); and Shockley's affirmation referred to the plaintiff as "the biological father of *this child.*" (Emphasis added.) Then things went awry.

The mother unilaterally decided to change that agreed upon—and recorded as such—name, and the hospital staff, without any authorization from the father or, as far as I can see, from the law, took it upon themselves to comply with her telephonic request to alter their records, namely, the birth certificate worksheet. And from that unauthorized, altered document the hospital generated a "certificate of live birth" that contains a last name that is the product, not of both parents, but of only one, that is contrary to the agreed upon last name memorialized on the jointly signed, sworn to and notarized acknowledgment of paternity, and that even has a misspelling of the child's middle name that has never been in controversy.

With this factual background, I now turn to the language of the relevant statutes. There are three, all of which must be read together. Section 19a-42 (d) (1) provides in relevant part: "Upon receipt of . . . an acknowledgment of paternity executed in accordance with the provisions of subsection (a) of 46b-172 by both parents of a child born out of wedlock . . . the commissioner shall . . . amend, as appropriate, such child's birth certificate to show such paternity if paternity is not already shown on such birth certificate . . . ." Section 46b-172 (a)[11] in turn requires that both parents sign and swear to the truth of the statements

---

[11] General Statutes § 46b-172 (a) (1) provides in relevant part that "a written acknowledgment of paternity executed and sworn to by the putative father of the child when accompanied by (A) an attested waiver of the right to a blood test, the right to a trial and the right to an attorney, and (B) a written affirmation of paternity executed and sworn to by the mother of the child shall have the same force and effect as a judgment of the Superior Court. It shall be considered a legal finding of paternity without requiring or permitting judicial ratification, and shall be binding on the person executing the same whether such person is an adult or a minor . . . ."

in the acknowledgment of paternity, and provides for an elaborate set of warnings and instructions to both parents regarding the legal consequences of such an acknowledgment. Most importantly, that section specifically provides that the acknowledgment "shall have the same force and effect as a judgment of the Superior Court. It shall be considered a legal finding of paternity without requiring or permitting judicial ratification, *and shall be binding on the person executing the same* . . . ." (Emphasis added.) General Statutes § 46b-172 (a). General Statutes § 7-36 (10), which governs municipal registrars of vital statistics, provides in relevant part, as the majority notes: "(10) '[a]mendment' means to (A) change or enter new information on a certificate of birth, marriage, death or fetal death, more than one year after the date of the vital event recorded in such certificate, in order to accurately reflect the facts existing at the time of the recording of the event . . . ."

It is clear that the general purpose of this statutory scheme is the integrity and accuracy of birth records, so that they, in the language of § 7-36 (10), "accurately reflect the facts existing at the time of the recording of the event," namely, in the present case, the time of the birth of the child. Another purpose of this scheme is to honor, where feasible, the concept that the naming of a child is one of the first, supreme acts of parentage.

Accordingly, the language of § 19a-42 (d) (1) must be construed so as to carry out those purposes. This necessarily means that the statute must also be construed to carry with it an implied provision that permits the defendant to amend his records when they are shown to be the result of a clerical or other error. Such an implied power fits comfortably within, and is fully consistent with, the defendant's authority to amend a birth certificate "as appropriate." Otherwise, simply because the documents submitted to the defendant,

namely, the acknowledgment of paternity and certificate of live birth, had been so filed, they could not, under the majority's cramped interpretation of § 19-42 (d) (1), be amended by the defendant even if they were shown to be inaccurate as a result of a clerical or other error. Such an interpretation would hardly further the purposes of maintaining the integrity and accuracy of birth records, and of honoring the joint parental conduct of naming a child. Indeed, so restricting the authority of the defendant would, on the contrary, only serve to perpetuate what has been shown to be an inaccuracy in those records and would dishonor that parental conduct.

Applying this understanding of the statutory scheme to the facts of the present case leads to the conclusion that the defendant had ample authority and was obligated to amend the child's birth certificate so as to reflect the facts existing at the time of birth, namely, to reflect his given name of "Nnamdi Ikwunne Okeke." That was the name sworn to by both his parents on the acknowledgment of paternity, as their first, supreme act of joint parentage. That was the name of the child whom the plaintiff acknowledged as his own son, and that was the name of the child whom Shockley affirmed to be her child with the plaintiff. The certificate of live birth, which did not reflect that name, was the result solely of unauthorized conduct by both Shockley and the hospital staff in altering the live birth worksheet. Furthermore, as provided in § 46b-172 (a) (1), both the plaintiff and Shockley were legally bound by the terms of that acknowledgment of paternity, to the same extent as if it had been a judgment of the Superior Court. Surely, such a judgment could not be unilaterally altered simply by a telephone call from one of the parties bound thereby. Under these peculiar and unique circumstances, I would deem the naming information on the certificate of live birth to be the result of a clerical or

other error that gave the defendant the authority and obligation to amend the certificate in accord with the request of the plaintiff.

The majority places great weight on the language of § 19-42 (d) (1) that "the commissioner shall . . . amend, as appropriate, such child's birth certificate . . . to change the name of the child if so indicated on the acknowledgment of paternity form . . . ." The majority argues that a change of name was not so indicated on the form because the parties did not check that box. I disagree with this approach.

First, on a general basis, this argument does not address what I believe to be a necessary implication of the statute, namely, to provide for the correction of clerical or other errors. Second, the form itself belies that weight. The space on the form on which the majority relies so heavily is titled: "Change child's last name on birth certificate" followed by blocks for "Yes" and "No." Right next to that space is a corresponding space, titled: "If yes, child's last name as it will appear on new birth certificate." Thus, these two blocks are designed for a situation in which the parents want to change the name of a child who already has a live birth certificate. That was not the present case. When the plaintiff and Shockley signed this acknowledgment form, no such certificate had been issued; indeed, one could not be issued until after this form was executed by them. Thus, the plaintiff should not be barred from his entitled relief by a space on a form that was not designed for the facts of the present case.

The majority's reading of the statutory scheme rests on the assumption that the acknowledgment of paternity addresses only the issue of who is the father of the child, to the total exclusion of the name of the child. I disagree with this assumption. First, it ignores the societal background of the statute, namely, the great

weight of the tradition of the right of parents in the naming of their child. Second, it ignores the form itself, which is generated by the defendant. That form requires the father to acknowledge his paternity of the "child *named above*," and the mother to affirm the father's paternity "of *this child*," an obvious reference to the child *named* in the document. Third, it ignores the effect of § 46b-172 (a), which makes the acknowledgment of paternity legally "binding" on both parents, to the same extent as if it were a judgment of the Superior Court. I fail to see why, if it is legally binding on the parents of a child, it is somehow not legally binding on the defendant.

I therefore dissent, and would reverse the judgment of the trial court and remand the case with direction to sustain the plaintiff's appeal.