39 A.3d 1095 (2012)
304 Conn. 317
Edward C. OKEKE
v.
COMMISSIONER OF PUBLIC HEALTH.
No. 18677.
Supreme Court of Connecticut.
Argued January 4, 2012.
Decided April 10, 2012.
*1097 Edward C. Okeke, pro se, the appellant (plaintiff).
Daniel Shapiro, assistant attorney general, with whom, on the brief, was George Jepsen, attorney general, for the appellee (defendant).
ROGERS, C.J., and NORCOTT, PALMER, ZARELLA, McLACHLAN, EVELEIGH and HARPER, Js.
EVELEIGH, J.
The sole issue in this certified appeal is whether, pursuant to General Statutes § 19a-42 (d)(1),[1] the defendant, the commissioner *1098 of public health (commissioner), has the authority to amend a child's birth certificate, where the name on the birth certificate differs from that initially agreed upon by the parents on an acknowledgement of paternity form.
The plaintiff, Edward C. Okeke, appeals, following our grant of his petition for certification, from the judgment of the Appellate Court affirming the judgment of the trial court dismissing his administrative appeal. We conclude that the commissioner does not have the authority to amend the birth certificate under the facts of this case and, accordingly, we affirm the judgment of the Appellate Court.
The undisputed facts of this case were fully set forth in the Appellate Court's opinion, Okeke v. Commissioner of Public Health, 122 Conn.App. 373, 999 A.2d 808 (2010). "On May 25, 2000, a male child was born to the plaintiff and Tamara A. Shockley. The parties were not married at the time of the birth of the child and have never been married to each other. The parties executed an acknowledgement of paternity pursuant to General Statutes § 46b-172.[2] Shockley affirmed the acknowledgement of paternity on May 26, 2000, and the plaintiff affirmed the acknowledgement on June 1, 2000. The name of the child on the paternity acknowledgement is stated as `Nnamdi Ikwunne Okeke.'
"While in the hospital, at some time after the child's birth, Shockley also completed a birth certificate worksheet. Initially, she entered the child's name on the worksheet as `Nnamdi Ikwunne Okeke.' On May 30, 2000, however, Shockley called the hospital and requested that the child's name on the birth certificate worksheet be changed to `Nnamdi Okeke Shockley.' In response, a hospital staff person changed the name on the acknowledgement of paternity form to `Nnamdi Okeke Shockley.' On June 5, 2000, Shockley again called the hospital and requested that her son's name be changed on the birth certificate worksheet to `Nnamdi Ikwanne Shockley-Okeke.' In response, a hospital staff person changed the name on the birth certificate worksheet to `Nnamdi Ikwanne Shockley-Okeke.'[3] The acknowledgement of paternity indicating the child's name as `Nnamdi Okeke Shockley,' and the certificate of live birth indicating the child's name as `Nnamdi Ikwanne Shockley-Okeke,' were filed with the department of public health (department). The official birth certificate of the child lists his name as `Nnamdi Ikwanne Shockley-Okeke.'
"On April 13, 2007, the plaintiff filed with the department an `[a]pplication for *1099 [a]mendment of [m]y [s]on's birth certificate.' Pursuant to § 19a-42 (d)(1),[4] the plaintiff sought to amend the name on his son's birth certificate by removing the mother's name, Shockley, in accordance with the previously executed acknowledgement of paternity.[5] Following an evidentiary hearing, the hearing officer denied the plaintiff's application, concluding that, pursuant to § 19a-41-9 (a) of the Regulations of Connecticut State Agencies,[6] the plaintiff is permitted to ask a registrar of vital statistics to make a change to his son's name only if he has a certified court order allowing the change. Because the plaintiff did not present such a court order, he [had] failed to meet this requirement. The hearing officer also concluded that the plaintiff did not meet the requirements of § 19a-41-9 (b) of the Regulations of Connecticut State Agencies because more than thirty days had passed since the child's birth, the plaintiff was not a custodial parent, and he was not seeking to rectify a typographical or clerical error.[7]
"In response to the plaintiff's motion for reconsideration, the hearing officer addressed the plaintiff's claim that he made pursuant to § 19a-42 (d)(1). The hearing officer concluded that the statute permits a change of a child's name on a birth certificate on the basis of an acknowledgement form only `if such paternity is not already shown on the birth certificate.' Because paternity was already indicated on the birth certificate, the department's receipt of the acknowledgement of paternity form did not trigger an amendment to the birth certificate. The hearing officer accordingly denied the plaintiff's motion for reconsideration.
"Thereafter, the plaintiff timely filed an administrative appeal with the Superior Court. The plaintiff did not take issue with any of the factual findings of the hearing officer but challenged the interpretation and application of § 19a-42 (d)(1), claiming that the commissioner must change the name on the birth certificate to the name indicated on the acknowledgement of paternity form.[8] Following a *1100 hearing, the court dismissed the plaintiff's appeal." Okeke v. Commissioner of Public Health, supra, 122 Conn.App. at 375-77, 999 A.2d 808. The plaintiff then appealed from the judgment of the trial court to the Appellate Court.
On appeal to the Appellate Court, the plaintiff asserted that the phrase in § 19a-42 (b)(1) "`to change the name of the child if so indicated on the acknowledg[e]ment of paternity form,' essentially directs the commissioner to ensure that the name on the birth certificate corresponds to the name on the acknowledgement of paternity form." Id., at 379-80, 999 A.2d 808. The Appellate Court disagreed and concluded as follows: "When read in its entirety ... we conclude that the plaintiff's contention is misplaced because the plaintiff ignores the triggering language that allows the commissioner to amend a birth certificate pursuant to § 19a-42 (d)(1): if paternity is not already shown on such birth certificate.... General Statutes § 19a-4 (d)(1). The unambiguous language of the statute involves determinations of paternity and changing a child's name when it is determined that the biological father of the child is not listed, or is incorrectly listed, on the birth certificate. Here, paternity is already shown on the birth certificate and there has never been a question regarding the identity of the biological father." (Emphasis in original; internal quotation marks omitted.) Okeke v. Commissioner of Public Health, supra, 122 Conn.App. at 380, 999 A.2d 808. Accordingly, the Appellate Court affirmed the judgment of the trial court sustaining the commissioner's denial of the plaintiff's application to amend his son's birth certificate. Id., at 381, 999 A.2d 808.
Thereafter, the plaintiff sought certification to appeal from the judgment of the Appellate Court. We granted the plaintiff's petition for certification to appeal, limited to the following issue: "Whether the Appellate Court properly concluded that under ... § 19a-42 (d)(1), the [commissioner] had neither the duty nor the authority to amend the child's birth certificate, where the name on the birth certificate differed from that agreed by the parents on an acknowledgement of paternity form?" Okeke v. Commissioner of Public Health, 298 Conn. 915, 915-16, 4 A.3d 832 (2010).
On appeal to this court, the plaintiff contends that, pursuant to § 19a-42 (d)(1), the commissioner has both the authority and the duty to amend the child's birth certificate when the nature of the amendment is needed to protect the integrity and accuracy of the vital record. Specifically, the plaintiff asserts that, to give effect to the legislature's intent to protect the integrity and accuracy of vital records, it is imperative that the child's birth certificate be amended. The plaintiff also contends that the legislative history of the statute supports the interpretation that the commissioner is authorized and required to amend the child's birth certificate even if the child's paternity had already been determined on his birth certificate.
In response, the commissioner asserts that the plaintiff ignores the triggering language of § 19a-42 (d)(1), which provides that the commissioner shall amend a birth certificate to show paternity "if paternity is not already shown on such birth certificate...." The commissioner further asserts that the Appellate Court properly concluded that the "unambiguous language of the statute involves determinations of paternity and changing a child's name when it is determined that the biological father of the child is not listed, or is incorrectly listed, on the birth certificate." Okeke *1101 v. Commissioner of Public Health, supra, 122 Conn.App. at 380, 999 A.2d 808. The commissioner contends that, because paternity is already listed on the birth certificate in this case, the department's authority under § 19a-42 (d)(1) is not triggered. We agree with the commissioner.
As a preliminary matter, we set forth the applicable standard of review and guiding principles. "[J]udicial review of the commissioner's action is governed by the Uniform Administrative Procedure Act [(UAPA), General Statutes §§ 4-166 through 4-189], and the scope of that review is very restricted.... [R]eview of an administrative agency decision requires a court to determine whether there is substantial evidence in the administrative record to support the agency's findings of basic fact and whether the conclusions drawn from those facts are reasonable.... Neither this court nor the trial court may retry the case or substitute its own judgment for that of the administrative agency on the weight of the evidence or questions of fact.... Our ultimate duty is to determine, in view of all of the evidence, whether the agency, in issuing its order, acted unreasonably, arbitrarily, illegally or in abuse of its discretion." (Internal quotation marks omitted.) Sengchanthong v. Commissioner of Motor Vehicles, 281 Conn. 604, 609, 917 A.2d 942 (2007); see Jim's Auto Body v. Commissioner of Motor Vehicles, 285 Conn. 794, 803-804, 942 A.2d 305 (2008).
"A reviewing court, however, is not required to defer to an improper application of the law.... It is the function of the courts to expound and apply governing principles of law.... We previously have recognized that the construction and interpretation of a statute is a question of law for the courts, where the administrative decision is not entitled to special deference.... Questions of law [invoke] a broader standard of review than is ordinarily involved in deciding whether, in light of the evidence, the agency has acted unreasonably, arbitrarily, illegally or in abuse of its discretion.... Because this case forces us to examine a question of law, namely, [statutory] construction and interpretation ... our review is de novo.... We are also compelled to conduct a de novo review because the issue of statutory construction before this court has not yet been subjected to judicial scrutiny. E.g., Tracy v. Scherwitzky Gutter Co., 279 Conn. 265, 272, 901 A.2d 1176 (2006) ([a] state agency is not entitled ... to special deference when its determination of a question of law has not previously been subject to judicial scrutiny ...); Tele Tech of Connecticut Corp. v. Dept. of Public Utility Control, 270 Conn. 778, 788, 855 A.2d 174 (2004) (the traditional deference accorded to an agency's interpretation of a statutory term is unwarranted when the construction of a statute ... has not previously been subjected to judicial scrutiny [or to] ... a governmental agency's timetested interpretation ...)." (Citation omitted; internal quotation marks omitted.) Southern New England Telephone Co. v. Cashman, 283 Conn. 644, 649-50, 931 A.2d 142 (2007); see also Jim's Auto Body v. Commissioner of Motor Vehicles, supra, 285 Conn. at 804, 942 A.2d 305.
"The principles that govern statutory construction are well established. When construing a statute, [o]ur fundamental objective is to ascertain and give effect to the apparent intent of the legislature.... In other words, we seek to determine, in a reasoned manner, the meaning of the statutory language as applied to the facts of [the] case, including the question of whether the language actually does apply.... In seeking to determine that meaning, General Statutes § 1-2z directs us first to consider the text of the statute *1102 itself and its relationship to other statutes. If, after examining such text and considering such relationship, the meaning of such text is plain and unambiguous and does not yield absurd or unworkable results, extratextual evidence of the meaning of the statute shall not be considered.... When a statute is not plain and unambiguous, we also look for interpretive guidance to the legislative history and circumstances surrounding its enactment, to the legislative policy it was designed to implement, and to its relationship to existing legislation and common law principles governing the same general subject matter...." (Internal quotation marks omitted.) Friezo v. Friezo, 281 Conn. 166, 181-82, 914 A.2d 533 (2007).
Section 19a-42 (d)(1) provides in relevant part: "Upon receipt of ... an acknowledgment of paternity executed in accordance with the provisions of subsection (a) of section 46b-172 by both parents of a child born out of wedlock ... the commissioner shall include on or amend, as appropriate, such child's birth certificate to show such paternity if paternity is not already shown on such birth certificate and to change the name of the child if so indicated on the acknowledgment of paternity form...." (Emphasis added.)
The plaintiff asserts that the language of § 19a-42 (d)(1) authorizes and requires the commissioner to amend the birth certificate to ensure that the name on the birth certificate matches the name on the acknowledgement of paternity form. We disagree. The language of § 19a-42 (d)(1) provides that the commissioner shall amend the child's birth certificate "if paternity is not already shown on such birth certificate...." We conclude that this language clearly and unambiguously provides that the commissioner can only include on or amend a child's birth certificate to show paternity if paternity is not already shown on the birth certificate.
In the present case, the paternity of the child has never been disputed, and the paternity of the child was already shown on the birth certificate. Therefore, the commissioner did not have the authority, pursuant to § 19a-42 (d)(1), to amend the birth certificate. General Statutes § 7-36(10) provides that "`[a]mendment' means to (A) change or enter new information on a certificate of birth, marriage, death or fetal death, more than one year after the date of the vital event recorded in such certificate, in order to accurately reflect the facts existing at the time of the recording of the event, (B) create a replacement certificate of birth for matters pertaining to parentage and gender change, or (C) change a certificate of birth, marriage, death or fetal death to reflect facts that have changed since the time the certificate was prepared, including, but not limited to, a legal name change or a modification to a cause of death...." In the present case, the Appellate Court properly concluded that, because the plaintiff and Shockley are "accurately listed as the biological parents of the child, there is no new information that needs to be added to the birth certificate to accurately reflect the facts existing at the time of the child's birth." Okeke v. Commissioner of Public Health, supra, 122 Conn.App. at 380-81, 999 A.2d 808. Section 19a-42 (d)(1), by its clear language, involves determinations of paternity and it does not consider the naming of the child separate and apart from that determination.
Pursuant to § 19a-42 (d)(1), the commissioner shall, if appropriate, "change the name of the child if so indicated on the acknowledgment of paternity form or within the certified court order as part of the paternity action." (Emphasis added.) In the present case, the acknowledgement *1103 of paternity form does not indicate that the child's name should be changed. The acknowledgement of paternity form has a line that prompts: "Change child's last name on birth certificate." The form contains both yes and no boxes to designate such a choice. In the present case, the parties did not check either box. The plaintiff suggests that the phrase "if so indicated on the acknowledgment of paternity form" pursuant to § 19a-42 (d)(1) should be ignored; however, we have long held that "[i]nterpreting a statute to render some of its language superfluous violates cardinal principles of statutory interpretation." American Promotional Events, Inc. v. Blumenthal, 285 Conn. 192, 203, 937 A.2d 1184 (2008). In construing statutes, courts must presume that there is a purpose behind every sentence, clause or phrase used in the statute and that no part of the statute is superfluous. Small v. Going Forward, Inc., 281 Conn. 417, 424, 915 A.2d 298 (2007). Accordingly, we conclude that the Appellate Court properly concluded that § 19a-42 (d)(1) does not authorize the commissioner to amend the birth certificate under the facts of this case.[9]
Furthermore, although § 19a-41-9 (b) of the Regulations of Connecticut State Agencies provides that clerical errors can be changed within thirty days of the birth of the child, there is no statutory authority for the commissioner to unilaterally act to amend a birth certificate for "other errors." See General Statutes § 7-36(10). The regulations specify certain circumstances under which the department is authorized to amend a birth certificate, and the plaintiff does not meet these criteria. See Regs., Conn. State Agencies § 19a-41-9 (a) and (b). Namely, there is no court order granting the name change, the proposed amendment is not a typographical or clerical errorrather, this appears to be a dispute between Shockley and the plaintiffand the request was not made within thirty days of the child's birth. Regs., Conn. State Agencies § 19a-41-9 (a) and (b). Therefore, § 19a-41-9 (b) does not apply.
In the absence of meeting the requirements of the regulations for corrections due to clerical errors, the commissioner is permitted to amend the birth certificate if the department receives a valid court order, and the plaintiff may seek such an order from a court with jurisdiction over this matter. Accordingly, we are mindful that, despite our interpretation of § 19a-42 (d)(1), there are other avenues to correct errors or resolve a dispute over a name on a birth certificate, namely, by filing an action in the court system.
We agree with the plaintiff that the legislature has placed great importance on maintaining the integrity of vital records. We previously have acknowledged that the legislature has recognized that the "accuracy and reliability of these [vital] records [are] vital to the many purposes for which they are used." In re Michaela Lee R., 253 Conn. 570, 587, 756 A.2d 214 (2000). Further, the legislature has statutorily authorized the commissioner to change the records under certain prescribed circumstances. The plaintiff's situation simply does not fit within the previously referenced circumstances. The present matter appears to be a dispute between Shockley and the plaintiff that would best be resolved by a court of competent jurisdiction. We are aware of the fact that this may be viewed by some, including the plaintiff, as a harsh result. *1104 As we noted previously, however, the plaintiff is not without alternative remedies. Our function is to interpret the statutes enacted by the legislature. It is not proper for us either to rewrite the statute or interpret the statute in such a way as to be contrary to the clear intent of the legislature. "[T]his court cannot, by judicial construction, read into legislation provisions that clearly are not contained therein." (Internal quotation marks omitted.) Stone-Krete Construction, Inc. v. Eder, 280 Conn. 672, 682, 911 A.2d 300 (2006); see also Harris Data Communications, Inc. v. Heffernan, 183 Conn. 194, 198, 438 A.2d 1178 (1981) ("[t]he intent of the legislature is to be found in the meaning of the words of the statute; that is, in what the legislature actually did say, not in what it meant to say"). We will not ascribe to the commissioner a power greater than that authorized by the legislature. Accordingly, we conclude that the Appellate Court properly held that the commissioner did not have the authority to change the birth certificate in the present case under the clear and unambiguous language of § 19a-42 (d)(1). If the legislature wishes to amend the statute so that someone in the plaintiff's position will have a remedy therein in the future, it is certainly at liberty to do so at any time.
The judgment of the Appellate Court is affirmed.
In this opinion the other justices concurred.
NOTES
[1] General Statutes § 19a-42 (d)(1) provides in relevant part: "Upon receipt of ... an acknowledgment of paternity executed in accordance with the provisions of subsection (a) of section 46b-172 by both parents of a child born out of wedlock ... the commissioner shall include on or amend, as appropriate, such child's birth certificate to show such paternity if paternity is not already shown on such birth certificate and to change the name of the child if so indicated on the acknowledgment of paternity form...."
[2] General Statutes § 46b-172 (a)(1) provides in relevant part: "In lieu of or in conclusion of proceedings under section 46b-160, a written acknowledgment of paternity executed and sworn to by the putative father of the child when accompanied by (A) an attested waiver of the right to a blood test, the right to a trial and the right to an attorney, and (B) a written affirmation of paternity executed and sworn to by the mother of the child shall have the same force and effect as a judgment of the Superior Court. It shall be considered a legal finding of paternity without requiring or permitting judicial ratification, and shall be binding on the person executing the same whether such person is an adult or a minor, subject to subdivision (2) of this subsection...."
[3] Shockley testified that the different spelling of the child's middle name, "Ikwanne," was a clerical error. The child's correct middle name is not an issue in this appeal.
[4] General Statutes § 19a-42 (d)(1) provides: "Upon receipt of (A) an acknowledgment of paternity executed in accordance with the provisions of subsection (a) of section 46b-172 by both parents of a child born out of wedlock, or (B) a certified copy of an order of a court of competent jurisdiction establishing the paternity of a child born out of wedlock, the commissioner shall include on or amend, as appropriate, such child's birth certificate to show such paternity if paternity is not already shown on such birth certificate and to change the name of the child if so indicated on the acknowledgment of paternity form or within the certified court order as part of the paternity action."
[5] According to the plaintiff, he did not learn of the name on his son's birth certificate until May, 2001, when Shockley filed an application with the Probate Court to change the child's first name.
[6] Section 19a-41-9 (a) of the Regulations of Connecticut State Agencies provides in relevant part: "The local registrar of the town where a birth occurred or the [d]epartment shall amend a name on a birth certificate when the request for the amendment is accompanied by a certified copy of a court order granting the legal name change...."
[7] Section 19a-41-9 (b) of the Regulations of Connecticut State Agencies provides in relevant part: "For up to [thirty] days following a registrant's birth, a parent may request that the registrant's name be changed to correct an obvious typographical or clerical error, by signing and presenting to the local registrar of the town in which the birth occurred, the Parent Notice issued by the birthing hospital. After said thirty-day period, a registrant, if over eighteen years old, or a custodial parent or legal guardian of the registrant, if the registrant is a minor, may request that the registrant's name be changed to correct or amend obvious typographical or clerical errors ...."
[8] In his appeal to the trial court, the plaintiff did not challenge the commissioner's determination that he failed to comply with the requirements of § 19a-41-9 (a) and (b) of the Regulations of Connecticut State Agencies.
[9] Because we conclude that § 19a-42 (d)(1) is plain and unambiguous, pursuant to General Statutes § 1-2z, we do not resort to consideration of extratextual evidence.